**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| MATTHEW TRAXLER, ANGIE BANYAS, ALEX KINSFATHER, and CHRIS MORRISON individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PPG INDUSTRIES, INC., PPG ARCHITECTURAL FINISHES, INC., and PPG ARCHITECTURAL COATINGS, LLC<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br>Judge<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Matthew Traxler, Angie Banyas, Alex Kinsfather, and Chris Morrison (hereinafter "Plaintiffs"), by and through their attorneys, bring this action against Defendants PPG Industries, Inc., PPG Architectural Finishes, Inc., and PPG Architectural Coatings, LLC (collectively "PPG" or "Defendants"), on behalf of themselves and all others similarly situated, and allege the following based on information and belief, except as to allegations specifically pertaining to Plaintiffs, which are made upon personal knowledge.

## NATURE OF THE CASE

1. Plaintiffs bring this Complaint on behalf of a class of all similarly situated purchasers of Defendants' Olympic® Rescue It!® branded resurfacing products (the "Rescue It Products" or "the Products"). Despite knowing that the Rescue It Products are

defective, PPG marketed and sold the Rescue It Products to millions of unsuspecting consumers, causing those consumers to suffer extensive damages.

2. The Rescue It Products are intended to be used by consumers to repair and revitalize their existing decking, docks, porches, sidewalks, or other wood and concrete surfaces by covering the surface with a thick, weather-resistant coating. Defendants market Rescue It Products as being of the highest quality, capable of resurfacing, sealing, and waterproofing all in one product. Defendants advertise that customers will "love this product," marketing Rescue It Products as: able to "lock[] down splinters and fill[] cracks up to ¼ [inch]"; able to preserve decking or concrete surface aesthetics for many years; making surfaces "barefoot friendly" and "slip resistant"; providing a "mildew resistant dual-action coating"; and making surfaces sufficient to withstand inclement weather (providing "weatherproofing protection").[1]

3. Defendants claim that Rescue It Products provide the "Best Protection" and "lasting results you'll be proud to enjoy."[2] Defendants even encourage customers not to replace their decking or other surfaces but, instead, to use Rescue It Products. Their website urges: "Don't replace it. Rescue it!"[3]

4. Contrary to PPG's representations and illusory guarantees and warranties as alleged herein, the Rescue It Products are plagued by design flaws that cause them to fail to adhere properly to the underlying decking or concrete material, causing the Rescue It

[1] http://www.olympic.com/products/olympic-rescue-it-wood-and-concrete-resurfacer (last visited May 7, 2015).

[2] http://ppgacbrandsite.blob.core.windows.net/olympic/pdfs/downloads/rescue-it-prep/Olympic_PDF_4.pdf (last visited May 7, 2015).

[3] http://www.olympic.com/products/olympic-rescue-it-wood-and-concrete-resurfacer (last visited May 7, 2015).

Products to routinely peel, crack, and bubble, and causing damage to the property to which they are applied.

5. Despite knowing that the Rescue It Products suffer from these pervasive defects, Defendants continue to manufacture, market, and sell them to the public and continue to make false representations, guarantees, and warranties, despite the fact that the Rescue It Products deteriorate, are defective, have failed, and will continue to deteriorate, costing consumers substantial removal and replacement costs and causing significant property damage.

6. This class action seeks actual and punitive damages, injunctive relief, costs, attorneys' fees, and other relief as a result of Defendants' unfair, deceptive, untrue, and misleading advertising described herein.

## THE PARTIES

***Plaintiff Matthew Traxler***

7. Plaintiff Matthew Traxler ("Plaintiff Traxler") is citizen of the State of Ohio, residing in Cleveland, Cuyahoga County. In or about August 2014, Plaintiff Traxler purchased tinted Olympic® Rescue It!® Products from Lowes. Prior to making his purchase, Plaintiff Traxler viewed and relied upon the advertising claims made by Defendants regarding the Rescue It Products' high quality and long-lasting protection. He did not know that the Rescue It Product was defective prior to purchase. The Rescue It Product was installed on Plaintiff Traxler's deck as directed by Defendants. The Rescue It Products installed on his deck deteriorated within months of installation. As a result of his purchase of the Rescue It Products, Plaintiff Traxler suffered injury in fact

and lost money and property as a result of the unfair, deceptive, untrue, and misleading advertising described herein. Had Plaintiff Traxler known of the defective nature of the Rescue It Products, he would not have purchased them.

***Plaintiff Angie Banyas***

8. Plaintiff Angie Banyas ("Plaintiff Banyas") is a citizen of the Commonwealth of Pennsylvania, residing in Berwick, Luzerne County. In or about June 2014, Plaintiff Banyas purchased Olympic® Rescue It!® Products, including a three-gallon pail of deck resurfacer and a one-gallon container of deck cleaner, from Lowes. Prior to making her purchase, Plaintiff Banyas viewed and relied upon the advertising claims made by Defendants regarding the Rescue It Products' high quality and long-lasting protection. She did not know that the Rescue It Products were defective prior to purchase. The Rescue It Products were installed on her deck as directed by Defendants and deteriorated within months of installation. As a result of her purchase of the Rescue It Products, Plaintiff Banyas suffered injury in fact and lost money and property as a result of the unfair, deceptive, untrue, and misleading advertising described herein. Had Plaintiff Banyas known of the defective nature of the Rescue It Products, she would not have purchased them.

***Plaintiff Alex Kinsfather***

9. Plaintiff Alex Kinsfather ("Plaintiff Kinsfather") is citizen of the State of Washington, residing in Ferndale, Whatcom County. In or about the summer of 2014, Plaintiff Kinsfather purchased three large buckets of Olympic® Rescue It!® Products from Lowe's. Prior to making his purchase, he viewed and relied upon the advertising

claims made by Defendants regarding the Rescue It Products' high quality and long-lasting protection. Plaintiff Kinsfather did not know that the Rescue It Products he purchased were defective prior to purchase. The Rescue It Products were installed on his deck as directed by Defendants but deteriorated within months of the installation. As a result of his purchase of the Rescue It Products, Plaintiff Kinsfather suffered injury in fact and lost money and property as a result of the unfair, deceptive, untrue, and misleading advertising described herein. Had Plaintiff Kinsfather known of the defective nature of the Rescue It Products, he would not have purchased them.

***Plaintiff Chris Morrison***

10. Plaintiff Chris Morrison ("Plaintiff Morrison") is citizen of the State of North Carolina, residing in Charlotte, Mecklenburg County. In 2014, Plaintiff Morrison purchased Olympic® Rescue It!® Products from Lowe's for use on her deck. Prior to making her purchase, she viewed and relied upon the advertising claims made by Defendants regarding the Rescue It Products' high quality and long-lasting protection. Plaintiff Morrison did not know that the Rescue It Products she purchased were defective prior to purchase. The Rescue It Products were installed on her deck as directed by Defendants but deteriorated within months of the installation. As a result of her purchase of the Rescue It Products, Plaintiff Morrison suffered injury in fact and lost money and property as a result of the unfair, deceptive, untrue, and misleading advertising described herein. Had Plaintiff Morrison known of the defective nature of the Rescue It Products, she would not have purchased them.

***Defendants***

11. Defendant PPG Architectural Finishes, Inc., is a subsidiary of Defendant PPG Industries, Inc., and manufactures protective paints and coatings for home and industry use. PPG Architectural Finishes, Inc., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at One PPG Place in Pittsburgh, Pennsylvania. The decisions, acts and omissions alleged herein were conceived by, implemented, and at all times carried out by Defendant PPG Architectural Finishes, Inc., directly or in concert with Defendant PPG Industries, Inc.

12. Defendant PPG Architectural Coatings, LLC, is a subsidiary of Defendant PPG Industries, Inc., and manufactures protective paints and coatings for home and industry use. PPG Architectural Coatings, LLC, is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at One PPG Place in Pittsburgh, Pennsylvania. The decisions, acts, and omissions alleged herein were conceived, implemented, and at all times carried out by Defendant PPG Architectural Coatings, LLC, directly or in concert with Defendant PPG Industries, Inc.

13. Defendant PPG Industries, Inc. is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania. PPG Industries, Inc. is a multinational company with subsidiaries that manufacture and market high-performance coatings, sealants, and specialty chemicals, primarily for maintenance, repair, and improvement applications, including all Olympic® Rescue It!® products. PPG Industries, Inc. oversees the work of Defendants PPG Architectural Finishes, Inc. and PPG Architectural Coatings, LLC, including designing, manufacturing, and purposefully causing the Rescue It Products to be placed into the stream of commerce within this District and throughout

the United States. At all times relevant herein, PPG Industries, Inc. was the parent company of PPG Architectural Coatings, LLC and PPG Architectural Finishes, Inc.

14. Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the Rescue It Products.

15. At all times relevant herein, the Defendants were actual and/or *de facto* joint venturers in the design, development, manufacture, marketing, and sales of the Rescue It Products.

## JURISDICTION AND VENUE

16. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00) and is a class action in which members Plaintiffs are citizens of states different from Defendants. Further, greater than two-thirds of the Class members reside in states other than the state in which Defendants are citizens.

17. This Court has personal jurisdiction over Defendants because they are authorized to do business and are conducting business throughout the United States, including Ohio; they have specifically marketed and sold the Rescue It Products in the United States, including Ohio; and they have sufficient minimum contacts with the various states of the United States, including Ohio, and/or sufficiently avail themselves of the markets of the various states of the United States, including Ohio, through their promotion, sales, and marketing within the United States, including Ohio, to render the exercise of jurisdiction by this Court permissible.

18. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this claim occurred in this District; Defendants regularly conduct and transact business in this District and are therefore subject to personal jurisdiction in this District; and Defendants have consented to venue in this District.

19. Venue is also proper because Defendants are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution and sale of the Rescue It Products in this District.

## FACTUAL ALLEGATIONS

### *Defendants' False and Misleading Marketing of the Rescue It Products and Illusory Guarantees and Warranties*

20. Defendants are leading manufacturers and sellers of protective paints and coatings for home and industrial use. Their products include home and industrial coatings, decorative fashion paints, primers, stains, and wood/concrete finishes and protective coatings.

21. The wood and concrete coatings market, and demand for Defendants' wood and concrete coating products, is recognized by Defendants, who acknowledge that "As renovation season approaches, homeowners look[] to revitalize their outdoor living spaces and refresh the exterior of their homes, whether it's doors, porches, decks, shutters or trim . . . ."[4]

---

[4] http://corporate.ppg.com/Media/Newsroom/2015/OLYMPIC-brand-by-PPG-introduces-ONE-exterior-paint (last visited May 7, 2015).

22. Defendants identify themselves as the industry and world leader in residential and commercial coatings:

> PPG Architectural Coatings, U.S. and Canada, is an industry leader in residential and commercial coatings, delivering the latest technologies and operational advancements through its strong portfolio of brands. It is a business of PPG Industries, the world's leading coatings company, and manufactures and sells interior and exterior paints, stains, caulks, repair products, adhesives and sealants for homeowners and professionals. Its distribution network includes more than 15,000 touchpoints through company-owned stores, independent dealer locations and all major home improvement centers across the U.S. and Canada.[5]

23. Defendants also hold their products out as being of the highest quality, and connect their financial success in the industry to the quality of their products:

> PPG Industries' vision is to be the world's leading coatings company by consistently delivering high-quality, innovative and sustainable solutions that customers trust to protect and beautify their products and surroundings. Through leadership in innovation, sustainability and color, PPG provides added value to customers in construction, consumer products, industrial and transportation markets and aftermarkets to enhance more surfaces in more ways than does any other company. Founded in 1883, PPG has global headquarters in Pittsburgh and operates in nearly 70 countries around the world. Reported net sales in 2014 were $15.4 billion.[6]

24. As is known in the industry, consumers purchasing wood and concrete coating products for their homes want products that will withstand harsh weather conditions but maintain their aesthetic appeal. With a large variety of wood and concrete surface coating products available in the market place, manufacturers must innovate to distinguish themselves from their competition.

---

[5] *Id.*

[6] *Id.*

25. To distinguish themselves in the marketplace, Defendants tout the durability, longevity, and low maintenance qualities of the Rescue It Products. Susan Uram, Senior Manager of Olympic exterior stains, a brand of PPG Architectural Coatings, recently publicly stated, "As warmer weather arrives this spring, many homeowners look to their decks, patios and other outdoor spaces as an extension of their home and living areas . . . ." Ms. Uram extols Defendants' Rescue It Products as "the perfect solution to give lightly-worn wood and concrete a refreshed look and create beautiful outdoor living spaces where homeowners want to spend the summer" and as able to "help completely transform people's outdoor spaces . . . ."[7]

26. Defendants market their Rescue It Products as providing a scuff, scratch, peel, and chip-resistant finish that withstands temperature changes, inclement weather, heavy foot traffic, and abrasions.

27. According to Defendants, the Rescue It Products are a "100% acrylic coating" that "fills cracks up to 1/4" and provides a barefoot friendly, extremely durable surface that resists fading and creates a mildew resistant coating while giving new life" to consumers' wood decking or concrete.[8]

28. On the labeling for Rescue It Products, Defendants represent that the Products are "[t]he ultimate remedy for severely weathered or damaged wood and concrete" and that they "RESIST[] CRACKING AND PEELING." Defendants' Rescue It Products are pictured below:

---

[7] http://www.coatingsworld.com/contents/view_breaking-news/2015-04-02/olympic-brand-by-ppg-expands-rescue-it-resurfacer-sealant-in-one-line/ (last visited May 7, 2015).

[8] http://ppgacbrandsite.blob.core.windows.net/olympic/pdfs/downloads/How_to_RESCUE_IT!_Wood.pdf (last visited May 7, 2015).







29. The newest products in the Rescue It Product line include Rescue It!® Light Resurfacer + Sealant in One (the "Light Resurfacer").

30. According to Defendants, the Light Resurfacer "is designed for lightly worn wood and concrete"; "conceals hairline cracks, hides imperfections and helps prevent splinters"; "creates a barefoot friendly, finely textured, slip-resistant finish"; and "provides waterproofing protection."[9] The Light Resurfacer Product, according to Senior Manager Uram, can help consumers "achieve stunning results . . . ."[10]

31. On its website, Defendants promise quality and satisfaction for all of their products, making the following warranty: **"WARRANTY:** Olympic guarantees satisfaction with the application and performance properties of this product when applied to a properly prepared surface in accordance with label directions."[11]

32. Rescue It Product labels all build on the same themes as Defendants' public statements and online advertising: that the Rescue It Products are low maintenance, high quality, and provide "lasting results," specifically advertising that the Products "resist[ ] cracking and peeling" and provide "the ultimate remedy" for worn and weathered concrete and decking or other wood surfaces.[12]

33. As set forth above, Defendants advertised that the Rescue It Products were long-lasting, reliable, and worry-free. Defendants' representations lead reasonable consumers to believe that the Products are premier and superior, and Defendants have accordingly charged and continue to charge consumers premium prices for the Products.

---

[9] http://www.olympic.com/products/olympic-rescue-it-resurfacer-light (last visited May 7, 2015).

[10] http://www.coatingsworld.com/contents/view_breaking-news/2015-04-02/olympic-brand-by-ppg-expands-rescue-it-resurfacer-sealant-in-one-line/ (last visited May 7, 2015).

[11] http://www.olympic.com/products/olympic-rescue-it-wood-and-concrete-resurfacer (last visited May 7, 2015).

[12] *Id.*

34. The purpose of Defendants' warranty and "guarantee[d] satisfaction" in connection with the Rescue It Products could only be to persuade consumers that the Products are durable, long-lasting, aesthetically pleasing upon application, low maintenance, and functional, with the ability to act as a weather barrier for many years.

35. Defendants' representations, the Rescue It Products' guarantee of satisfaction, and the warranty induce customers into purchasing the Products and provide a false belief that the Products are long-lasting and that Defendants stand behind their representations.

36. However, Defendants' representations about the quality, durability, and longevity of the Rescue It Products are false and materially misleading. As is alleged herein, Defendants had actual notice that the Products are of inferior quality and susceptible to failure far sooner than claimed, and that the Products *do not* in fact provide lasting results, even when applied properly in accordance with Defendants' instructions.

37. Instead, the Rescue It Products crack, chip, peel, and otherwise fail prematurely and in weather conditions that the products are advertised as capable of withstanding. The Products also become unbearably hot in sunlight, making the surfaces to which they are applied too hot for bare feet.

38. Despite their knowledge of these defects, which cause the Rescue It Products to fail, Defendants continue to market the Products as top of the line while masking their inferiority.

39. Defendants knowingly and intentionally conceal and fail to disclose that -- notwithstanding statements on their websites, brochures, advertisements, product labels, guarantees, and warranties – the Rescue It Products routinely fail within months after

proper installation, far in advance of the advertised time that the Products are supposed to last, *i.e.* "lasting results." Indeed, the fact that the Products have deteriorated at such a rate and will continue to deteriorate so quickly demonstrates their lack of durability and resiliency.

40. Similarly, Defendants knowingly and intentionally conceal and fail to disclose that they actually had no intention of honoring their guarantee of satisfaction or warranty, and that they routinely fail to honor their commitments when consumers notify them of the deterioration or failure of the Rescue It Products.

41. Defendants also made numerous material omissions in relevant advertisements and marketing materials, and uniformly withheld important information relating to the design, reliability, and performance of the Rescue It Products.

42. Purchasers of the Rescue It Products make purchasing decisions in reliance upon the information provided by Defendants and its authorized retailers on websites and in marketing literature, advertisements, guarantees, and warranties.

43. Defendants have had notice of the deficiencies described herein and have been routinely notified by customers that the Rescue It Products are defective and not performing as advertised.

44. Defendants made each of the above described assertions, statements, representations, and warranties with the intent and purpose of inducing suppliers, builders, and consumers to purchase and install or apply the Rescue It Products in residential and commercial structures throughout the United States. However,

Defendants knew that these misrepresentations were not true and that the Products were defective and would not perform as promised.

45. Had Defendants not withheld and omitted important information about the design, reliability, and performance of the Rescue It Products, Plaintiffs and the members of the Class would not have purchased and/or installed them, or would not have purchased them at the exorbitant prices that they in fact paid.

***Internet Complaints About Rescue It Products***

46. A large number of customers have complained about the low quality and premature failure of PPG's Rescue It Products. The following represents only a very small sampling of Internet postings by Rescue It Product purchasers reflecting their frustrations and dissatisfaction with the defective Rescue It Products (all *sic*):

> **Consumer No. 1:**
> I used several gallons of this product on my deck last summer and most of it peeled off over the winter! I spent several hours and hundreds of dollars and have to redo the entire deck! I'm extremely unhappy!!![13]
>
> **Consumer No. 2:**
> Bought this for our deck and put it on in Oct. it is now peeling off all over the entire deck. Would never buy this product or recommend it to anyone! Waste of time and money![14]
>
> **Consumer No. 3:**
> I applied this overpriced product less than a year ago and its already peeling and growing mold. The color didn't match what we'd bought, it turned out a dark orange, and it also heats up in the sun too, enough to burn your feet as soon as you step on it. At the

---

[13] Posted at http://www.lowes.com/pd_462080-86-79702A05_0__?productId=4621220 by "Rhonda" on April 7, 2014.

[14] Posted at *id.* by "DIYWife" on February 9, 2014.

rate its peeling off it may be gone soon though, so I'll just be out the large amount of money it set me back....[15]

**Consumer No. 4:**
Followed the preparation instructions . . . cleaned the deck, then took the extra step of sanding it and cleaning it again. Went on easy, no complaints.
Deck looked great and performed as advertised. That was June, 2013.
Then, winter in Ohio hit. Lots of peeling, chipped spots, ends look terrible. One spot where it peeled is at least the board width x 9 inches.
Very disappointed. Looking to get my money back.[16]

**Consumer No. 5:**
Refinished my deck last August, cleaned the deck as instructed and followed all directions...now every horizontal surface is peeling or has already peeled, the deck looks worse than it did before I "rescued it". Wasted over $300 and a week and a half of my time...I would not recommend this product to anyone, and will talk people out of using it if I see them looking to purchase it at the store.[17]

**Consumer No. 6:**
My husband and I put two coats on of this stain. We made sure it had a day to dry before adding the 2nd coat. Three days after we stained our deck we had a rain storm and the deck looked like it had soap suds coming from it and we noticed that the stain had bubbled in many spots. We stepped on them and poked the paint bubble with a pin and it seemed to do the trick but waiting for the next rain shower to see if it does it again. Not pleased with product.[18]

**Consumer No. 7:**
I bought 2 five gallon buckets for my deck followed the directions to the t. Looked good during the summer but come winter it started

---

[15] Posted at *id.* by “nickname” on April 10, 2014.

[16] Posted at *id.* by “BillFromOhio” on April 12, 2014.

[17] Posted at *id.* by “51596” on April 12, 2014.

[18] Posted at *id.* by “Sox1” on July 19, 2013.

peeling. Now I have to power wash the deck when it gets warm and try something other than an Olympic product .Very dissatisfied[19]

**Consumer No. 8:**
I followed the directions perfectly, including all of the prep, dry time, etc. I put this down in late September of 2013 and I noticed it starting to peel by November. I didn't put anything, no furniture, nothing on the deck yet as it was late fall by the time the project was done. For the month or so that this lasted I was very pleased with it, it was excellent. Then it started to peel and continued to deteriorate. I'm in Northern PA, so maybe this would be ok for climates that don't have harsh winters, or if your deck is covered, but as soon as the temps started dipping below freezing this did not hold up.[20]

**Consumer No. 9:**
Product looked great after applying last summer. During the winter started to flake and peel. Now looks horrible. Applied product to bare treated deck exactly as instructed. Still looks great on porch which is protected from the elements but looks horrible on deck which is exposed to the elements. EXTREMELY disappointed after all that expense and work. Would not recommend product and would rate it zero if possible. No more Olympic products for me![21]

**Consumer No. 10:**
I had a contractor paint my deck with Rescue IT as I had heard it was so effective. After one winter it started to peel off and after two winters I have peeled spots all over my deck.I went out on the deck just a few days ago to feed the birds and if I scuffed my shoe on the paint and it peeled right off. I asked Pittsburg Paints a year ago to come and look at the damage but they never showed.
As far as I am concerned that Rescue It is junk. [22]

**Consumer No. 11:**

---

[19] Posted at *id.* by "willyb" on March 19, 2014.

[20] Posted at *id.* by "Suwyma" on March 8, 2014.

[21] Posted at http://www.deckstainhelp.com/olympic-rescue-it-review-2014/ by "Larry" in March, 2015.

[22] Posted at *id.* by "Alice Marson" on March 5, 2015.

Rescue It was used to coat both vertical and horizontal surfaces of a deck and also a cedar wood picnic table. On both surfaces after 6-months there were large bubbles and pealed patches. These started occurring immediately after a Fall cool rain and expanded significantly after a snow storm. It has now been about 8-months since application. All horizontal surfaces have peals on them. The vertical surfaces still look good.[23]

**Consumer No. 12:**
My husband did our deck in May 2014. It is currently peeling up and not staying on the boards. It's rid because this product is not cheap.[24]

**Consumer No. 13:**
We purchased this stain based on the employee feedback at Lowe's. They suggested this stain for our older deck, newer deck and fence. My first complaint is that the stain didn't match between the stain for the fence and the Rescue It for the deck. I met with the Olympic rep at our local Lowe's who explained how to apply the stain and that the stains should match no matter the type of stain we purchased. He told us to apply another coat on the deck and come back if that wasn't the case. Well the stain is definitely different and looks ridiculous as different shades of brown. My 2nd complaint is that the stain was applied as per the instructions at the end of summer/early fall. After the stain was dry we moved our furniture back on the deck and if we moved a chair the stain would scrape and lift. By December (2-3 months) the stain was chipped and peeling from our deck. As of today our deck looks like it was stained 7 years ago. It looks terrible! This stain is definitely not a quality stain nor is it worth the money we paid for it! The picture I have of the deck is larger than 5mb so I am unable to load it. I did load a picture of the deck railing which have never been shoveled and have peeled/scraped terribly. I am extremely disappointed in the quality of this product.[25]

**Consumer No. 14:**

---

[23] Posted at *id.* by "Tom Stinemetze" in February, 2014.

[24] Posted at https://fbrr-prod.sta.bazaarvoice.com/olympicpaint-1/reviews/product/79702/ by "Chelsea15" on April 6, 2015.

[25] Posted at *id.* by "Unhappywithstain" on April 6, 2015.

During Sept I cleaned and put one coat of Rescue It on my deck floor but was unable to get to the the second coat or the railings before winter arrived. Now six months later I am finding many many spots flaking off. I am certainly glad I did not get to place a second coat or do the railing as that would have been more wasted money.[26]

**Consumer No. 15:**
We bought two 3 gallon containers in Navajo Red from Lowe's last spring. Used Olympic Deck Cleaner and followed the directions to the letter. Took two full days to apply the first coat, waited two days then applied the second. Everything looked great the first week then we noticed sap coming up, our deck is 8 years old with no previous treatments. Now that winter is over we have large areas where the Rescue It has peeled up completely. We can't walk on our deck without the Rescue It sticking to your feel and peeling off even more. Complete waste of our time and money.[27]

**Consumer No. 16:**
"Rescue it" -- Now I need rescue from it. 6 months after installation on a large deck I walked out on the deck at is peeling off. As you walk and twist your feet its comes off. Chair/table legs leave marks of missing paint. This was a new deck. The boards were weathered for 6+ months in the NC sun. It was cleaned with Olympic deck wash. It was dried then 2 coats applied. Horrible. Imagine what I and so many others have now to do. Somehow remove this paint from all the boards, cracks between boards and screw holes. Absolute nightmare! Olympic offer a refund for the paint - thanks. A competitor has a class action law suit against their brand of this paint........Zero Stars[28]

**Consumer No. 17:**
The absolute worst. Looked great when applied according to instructions but is peeling off in large strips after less than 8 months. DO NOT BUY! This is a horrible product. Out over $100

[26] Posted at *id.* by “todds” on April 5, 2015.

[27] Posted at *id.* by “KatieS” on April 5, 2015.

[28] Posted at *id.* by “Steve” on March 27, 2015.

in product and many hours of labor. Shame on you Olympic for putting a product like this out for consumers. Again, the worst.[29]

**Consumer No. 18:**
We applied this to our deck in July/August of 2014. It looked really nice and we were happy with the results. Then winter came and it started to peel. It is now March of 2015 and it is peeling very badly in big strips. We followed the direction but it does not seem to be weather proof. Since it has rained it has gotten even worse because water gets trapped underneath and causes more peeling. This is going to be very difficult to fix. This did not even last a year and we are extremely disappointed.[30]

**Consumer No. 19:**
bought this product thinking it would be the answer to our worn deck...not my mistake, because i told my husband it would crack and peel....yep, within the first season....bubbling and peeling.
You CAN'T walk on this stuff in the summer.....it will leave burns on the bottom of your feet.....
Second season.....still scrapping and try to remove chipped product, I live rural and had chickens, what peeled off they ate, kinda really dangerous....oh, and this deck is at my pool and this stuff is getting inside it....really afraid of what harmful chemicals are getting in my pool water....and then children swimming in it....I should send a bill to this company for hired help to scrap and remove this horrible from my deck and surrounding area...
this product is unworthy of purchase.....warranty is not a warranty.....DO NOT BUY[31]

**Consumer No. 20:**
It was wonderful when it went on and made our deck feel brand new. A drawback is that it gets super hot when the sun beats on it for a while. It has a 10 year warranty and this is our third year with it. It is chipping in places and will need to be touched up. I would have hoped it would have come closer to their expectations on how long it would last[32]

---

[29] Posted at *id.* by "Doug" on March 24, 2015.

[30] Posted at *id.* by "rrussell" on March 19, 2015.

[31] Posted at *id.* by "RHONDA" on March 24, 2015.

[32] Posted at *id.* by "Steveps" in February, 2015.

47. Consumers have also taken their complaints *directly* to Defendants, expressing their frustration with Rescue It Products on Defendants' Olympic® Rescue It!® website. For example (all *sic*):

> I am so very disappointed in this product! My Husband and sons prepped the area did everything that was in the directions and watched the preparation how to video also. And after the winter the stuff is coming right up its even coming into the house by getting stuck to my dogs feet its peels right off. I have a large deck and bought about 3 gallons of this stuff. It was supposed to be a really good product and it was not cheap! Now we have to do another huge job on trying to remove all of this stuff and redo the deck. I can not afford to just pay someone to do this over again. With all the money we put out i am disgusted that in less than a year we have to do this all over again .[33]

---

> Last spring we decided instead of replacing our worn widen deck we would use RESCUE IT! After two coats as directed we had a beautiful deck. Then winter happened! Unfortunately, I now have a deck that is pealing, chipped and looks almost as bad as before I painted it. What a waste of money and break backing labor! Now what?[34]

48. The above described issues with Rescue It Products are so prevalent that, as of the date of this Complaint, one of the first questions on Defendants' FAQ page for Rescue It Products is "WHY IS MY RESCUE IT CHIPPING AFTER ABOUT 8 MONTHS?"[35]

---

[33] Posted at http://www.olympic.com/products/olympic-rescue-it-wood-and-concrete-resurfacer by "donnabuds" on April 5, 2015.

[34] Posted at *id.* by "Marko590" on April 3, 2015.

[35] http://www.olympic.com/products/olympic-rescue-it-wood-and-concrete-resurfacer (last visited May 7, 2015).




**49.** Furthermore, Defendants often acknowledge customer complaints, yet do nothing to remedy the damage their Rescue It Products cause. For example:




*Plaintiffs' Experiences*

**<u>Plaintiff Traxler (Ohio)</u>**

50. As set forth herein, in or about August 2014, Plaintiff Traxler purchased his relevant Rescue It Products from Lowes. Prior to making his purchase, he viewed and relied upon the advertising claims made by both Lowes and Defendants regarding the Rescue It Products' high quality and long-lasting protection.

51. Plaintiff Traxler applied the Rescue It Products to the deck outside his home in August 2014, in full compliance with Defendants' directions and instructions regarding application.

52. Approximately five months later, in or around January 2015, the Rescue It Products began to bubble and peel off from Plaintiff Traxler's deck, causing extensive damage to the wood below:




 

53. What started as small peeling and bubbling has grown to peeling of strips that are several inches in length and lots of bubbling.

54. As of the date of filing this Complaint, Plaintiff Traxler has notified Defendants of the failure of their products; however, his home remains in disrepair as a result of the defective Rescue It Products.

**Plaintiff Banyas (Pennsylvania)**

55. As set forth herein, in or about June 2014, Plaintiff Banyas purchased her Rescue It Products from Lowe's in an effort to restore and revitalize her deck. Prior to making her purchase, she viewed and relied upon the advertising claims made by both Lowe's and Defendants regarding the Rescue It Products' high quality and long-lasting protection.

56. Plaintiff Banyas applied the Rescue It Products to the deck outside her home during the month of June, in full compliance with Defendants' directions and instructions regarding application.

57. Approximately nine months later, in or around March 2015, the Rescue It Products began to crack and peel off from Plaintiff Banyas's deck in large strips, causing extensive damage to the wood below:








58. As of the date of filing this Complaint, Plaintiff Banyas' home is in disrepair as a result of the defective Rescue It Products.

59. Plaintiff Banyas contacted Defendants via email on or about March 17, 2015 to complain about this issue. Approximately one week later, Plaintiff Banyas received a response offering to provide either a refund for the purchase price of the Rescue It Products or a voucher for the purchase of new Rescue It Products. Plaintiff Banyas declined this offer, as it did not account for the extensive damage done to her deck or the materials and labor necessary to repair the damage.

**Plaintiff Kinsfather (Washington)**

60. As set forth herein, in or about spring of 2014, Plaintiff Kinsfather purchased his relevant Rescue It Products from Lowe's. Prior to making his purchase, Plaintiff Kinsfather viewed and relied upon the advertising claims made by both Lowe's and Defendants regarding the Rescue It Products' high quality and long-lasting protection. A picture of the Rescue It Products he purchased, *i.e.* a photograph of one of three 2.67 gallon buckets of Rescue It, is shown below:




61. Plaintiff Kinsfather applied the Rescue It Products to the deck outside his home in the spring of 2014 in full compliance with Defendants' directions and instructions regarding application.

62. Approximately seven months later, in or around December, the Rescue It Products began to crack and peel off from Plaintiff Kinsfather's deck, causing extensive damage to the wood below:





63. In an attempt to repair the damage and salvage his deck, Plaintiff Kinsfather first removed the coating from the screws with a utility knife, then removed the screws. In order to fully repair the damage, Plaintiff Kinsfather believes it will be necessary to remove the rails, flip the boards on his deck to expose the non-treated side, reattach the rails, hard brush or sand the coating that ran over from the top board to the bottom board, and retread the boards. Plaintiff Kinsfather expects this process to require more than 50 hours of labor.

64. As of the date of filing this Complaint, Plaintiff Kinsfather has notified Defendants of the failure of their products; however, Plaintiff Kinsfather's home remains in disrepair as a result of the defective Rescue It Products.

**<u>Plaintiff Morrison (North Carolina)</u>**

65. As set forth herein, in or about September 2014, Plaintiff Morrison purchased her relevant Rescue It Products from Lowe's. Prior to making her purchase, Plaintiff Morrison viewed and relied upon the advertising claims made by both Lowe's and Defendants regarding the Rescue It Products' high quality and long-lasting protection.

66. Plaintiff Morrison applied the Rescue It Products to the deck outside her home in or around September and October of 2014, in full compliance with Defendants' directions and instructions regarding application.

67. Only a few months later, in or around March 2015, the Rescue It Products began to crack and peel off from Plaintiff Morrison's deck, causing extensive damage to the wood below:









68. Plaintiff Morrison spent a lot of money and many hours applying the Rescue It Product to her deck, and will now be forced to resurface her entire deck due to the failure of Defendants' Rescue It Product.

69. As of the date of filing this Complaint, Plaintiff Morrison has notified Defendants of the failure of their products; however, Plaintiff Morrison's home remains in disrepair as a result of the defective Rescue It Products.

70. Each of the Plaintiffs' Rescue It Products are defectively designed and manufactured, and prematurely failed.

71. Plaintiffs and members of the Class have suffered damages as a result of Defendants' deceptive practices, including but not limited to the fact that their Rescue It Products quickly deteriorate, are defective, and require repair and replacement (which has caused, or will cause, Plaintiffs and Class members to incur material and labor costs) earlier than could have reasonably been expected. Additionally, as a result of the defective quality of the Rescue It Products, Plaintiffs and members of the Class have suffered damage to their homes where the Rescue It Products were applied, diminishing the values of the affected homes. While these customers are forced to repair and/or replace Defendants' defective Rescue It Products, they are not reimbursed for the costs associated with this work.

**72.** The experiences and complaints of Plaintiffs, and Defendants' acknowledgement of these complaints, show that Defendants were well-aware of customer complaints and experiences concerning the defects in the Rescue It Products. Despite this knowledge,

Defendants have failed to implement any changes to remedy the defects associated with the Rescue It Products or the way in which those Rescue It Products are marketed and sold to consumers.

## CLASS ACTION ALLEGATIONS

73. Plaintiffs seek to bring Counts I-VII below as a class action, under Federal Rule of Civil Procedure 23, on behalf of themselves and all others similarly situated. The proposed Class ("the Class") is defined as:

> All residents of the United States who, within the applicable statute of limitations, purchased the Rescue It Products. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

74. In the alternative, Plaintiff Traxler seeks to bring Counts VIII-IX below as a class action, under Federal Rule of Civil Procedure 23, on behalf of himself and all others similarly situated. The proposed Class ("the Ohio Class") is defined as:

> All residents of Ohio who, within the applicable statute of limitations, purchased the Rescue It Products. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

75. In the alternative, Plaintiff Banyas seeks to bring Count X below as a class action, under Federal Rule of Civil Procedure 23, on behalf of herself and all others similarly situated. The proposed Class ("the Pennsylvania Class") is defined as:

> All residents of Pennsylvania who, within the applicable statute of limitations, purchased the Rescue It Products. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

76. In the alternative, Plaintiff Kinsfather seeks to bring Count XI below as a class action, under Federal Rule of Civil Procedure 23, on behalf of himself and all others similarly situated. The proposed Class ("the Washington Class") is defined as:

> All residents of Washington who, within the applicable statute of limitations, purchased the Rescue It Products. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

77. In the alternative, Plaintiff Morrison seeks to bring Count XII, below, as a class action, under Federal Rule of Civil Procedure 23, on behalf of herself and all others similarly situated. The proposed Class ("the North Carolina Class") is defined as:

> All residents of North Carolina who, within the applicable statute of limitations, purchased the Rescue It Products. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, assigns and

successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

78. Plaintiffs reserve the right to re-define these Classes prior to class certification.

79. Numerosity: The number of persons who are members of the Class (or Subclasses), as described above, is so numerous that joinder of all members in one action is impracticable.

80. Predominance: Questions of law and fact that are common to the entire Class (or Subclasses) predominate over individual questions because the actions of Defendants complained of herein were generally applicable to the entire Class (or Subclasses). These legal and factual questions include, but are not limited to:

**a)** whether the Rescue It Products are defective;

**b)** whether Defendants knew or should have known of the defective nature of the Rescue It Products;

**c)** whether Defendants owed a duty to Plaintiffs and the Class to exercise reasonable care in the design, manufacture, and marketing of the Rescue It Products;

**d)** whether Defendants breached this duty;

**e)** whether the Rescue It Products failed to perform in accordance with the reasonable expectations of ordinary consumers;

**f)** whether the Rescue It Products failed to perform as warranted by Defendants;

**g)** whether the warranties are unconscionable and unenforceable;

**h)** whether Defendants knew and failed to disclose that Defendants did not intend to honor its warranties and in fact, routinely refuses to honor its warranties; and

i) whether Plaintiffs and the Class suffered damages as a result of Defendants' conduct.

81. Commonality: All questions as to the representations and publicly disseminated advertisements and statements by Defendants are similarly common. A determination of Defendants' knowledge regarding the misleading and deceptive nature of the statements made and alleged herein on websites, brochures, advertisements, product labels, and warranties will be applicable to all members of the Class (or Subclasses, as defined above). Further, whether Defendants violated any applicable state laws and pursued the course of conduct complained of herein, whether Defendants acted intentionally or recklessly in engaging in the conduct described herein, and the extent of the appropriate measure of injunctive and declaratory relief, damages, and restitutionary relief are common questions to the Class (or Subclasses, as defined above).

82. Typicality: Plaintiffs' claims are typical of those brought on behalf of the members of the Class. Plaintiffs purchased defective Rescue It Products and the Products malfunctioned, failed, or otherwise proved defective shortly after installation or application. Plaintiffs, like all members of the Class, have suffered damages associated with the use of defective Rescue It Products, including not only the premature failure of

the Rescue It Products themselves, but also damage to their homes caused by moisture intrusion and exposure of the area covered with the Rescue It Products.

83. Adequacy of Representation: Plaintiffs will fully and adequately represent and protect the interests of the Class (or Subclasses, as defined above) because of the common injuries and interests of the members of the Class (or Subclasses) and the singular conduct of Defendants that is or was applicable to all members of the Class (or Subclasses). Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action and consumer litigation. Plaintiffs have no interests that are contrary to or in conflict with those of the Class (or Subclasses) they seek to represent.

84. Superiority: A class action is superior to all other available methods for fair and efficient adjudication of this controversy. Plaintiffs anticipate no difficulty in managing and maintaining this action as a class action.

85. The prosecution of separate actions by individual members of the Class (or Subclasses) would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards of conduct for Defendants under the laws alleged herein.

86. The claims of the Class (or Subclasses) may be certified under Rule 23(b)(1), (b)(2) and/or (b)(3). The members of the Class (or Subclasses) seek declaratory and injunctive relief but also seek sizeable monetary relief.

## CLAIMS FOR RELIEF

## COUNT I
## BREACH OF CONTRACT

87. Plaintiffs re-allege and incorporate by reference paragraphs 1-86 above.

88. During the Class Period, Plaintiffs and Class members, upon purchasing Rescue It Products, entered into a contract and warranty agreement with Defendants.

89. Defendants uniformly breached the contract and warranty agreement with Plaintiffs and the members of the Class by failing to abide by their obligations under the applicable law and the agreements.

90. Defendants' contract and warranty agreements were subject to the implied covenants that Defendants would conduct their business with Plaintiffs and the members of the Class in good faith and would deal fairly with consumers.

91. Defendants breached the contract and warranty agreement with Plaintiffs and the members of the Class by violating the implied covenant of good faith and fair dealing inherent in agreements. Defendants breached the covenant by selling Plaintiffs and Class members Rescue It Products that were inherently and knowingly defective with knowledge that the contract and/or warranties were unconscionable and that the warranties would not be honored, and by abusing their discretion in performance of the contract by intentionally subjecting Plaintiffs and the members of the Class to a risk beyond what Plaintiffs and the members of the Class could have contemplated at the time of purchasing the products.

92. Further, Defendants breached the implied covenant by not providing terms in the contract and/or warranty that conspicuously stated to Plaintiffs and Class members that the Rescue It Products would develop the defect.

93. At all times pertinent hereto, Plaintiffs and the members of the Class fully performed and satisfied their obligations under the contract and warranty agreement.

94. As a proximate result of the above described wrongful conduct and breaches committed by Defendants, Plaintiffs and the Class members have suffered and will continue to suffer damages and economic loss in an amount to be proven at trial. Plaintiffs and Class members are entitled to damages and injunctive and declaratory relief as specified below.

## COUNT II
## BREACH OF EXPRESS WARRANTY

95. Plaintiffs re-allege and incorporate by reference paragraphs 1-94 above.

96. In conjunction with the sale of Rescue It Products, Defendants warranted and promised that they would provide an operational product that was long lasting and provides "lasting results," or replace the defective product.

97. Defendants placed the Rescue It Products into the stream of commerce and, through advertisements and warranties, represented the quality of the Rescue It Products to the public in such a way as to induce reliance upon those representations.

98. Plaintiffs and the members of the Class did in fact rely on Defendants' representations in purchasing the Rescue It Products.

99. Plaintiffs and the members of the Class understood that Defendants' promises were part of the bargain when purchasing Rescue It Products.

100. Defendants breached the express warranties because, as set forth in detail above, they failed to provide customers with a product that would perform the basic intended and essential functions promised.

101. Defendants have received notice of the breaches of warranty alleged herein by virtue of complaints made by purchasers of Rescue It Products, as detailed above.

102. Defendants have failed to provide Plaintiffs or the Class, as a warranty replacement, products that conform to the qualities and characteristics that Defendants have expressly warranted are possessed by the Rescue It Products.

103. Despite requests to do so, Defendants refuse to adequately repair or replace their Rescue It Products in accordance with the stated warranty terms. As a result, Plaintiffs and members of the Class whose Rescue It Products have not failed are forced to wait for the eventual failure of their Rescue It Products and suffer the accompanying losses.

104. Further, the warranties themselves are unconscionable and unenforceable in that they fail to achieve their specified purpose because they do not provide consumers with an adequate remedy for the failure of Rescue It Products. The warranties do not provide the means for purchasers to repair and replace either the defective product itself, or to

remedy property damage to their decks, porches, homes, or other structures caused by these defects. Applying any warranty limitation to avoid the need to repair the defects set forth herein would be unconscionable in that, *inter alia*: the Rescue It Products contain inherent defects that were already existing at the time of purchase; Defendants knew, or were reckless in not knowing, about the defects, which could not be discovered by Plaintiffs and the members of the Class at the time of their purchases; and Plaintiffs and the members of the Class lacked any meaningful choice with respect to the warranty terms.

105. As a direct and proximate result of Defendants' breach of warranties, Plaintiffs and the Class members have suffered and will continue to suffer damages and losses in an amount to be proven at trial.

## COUNT III
## BREACH OF IMPLIED WARRANTY

106. Plaintiffs re-allege and incorporate by reference paragraphs 1-105 above.

107. Defendants designed, developed, tested, manufactured, distributed, marketed, and/or sold Rescue It Products through their websites, other e-commerce sites, and retail stores for the purpose of use on customers' decks, porches, homes, and other structures.

108. Defendants gave specific express warranties directly to their customers as set forth herein. Defendants also impliedly warranted that Rescue It Products were properly designed, developed, tested, manufactured, distributed, marketed, and sold, and that the designs and materials were high quality and would provide long lasting performance.

109. Defendants knew that the Rescue It Products they designed, manufactured, created, distributed, and/or sold would be used by consumers on their decks, porches, homes, and other structures.

110. Plaintiffs and the members of the Class relied on Defendants' skill and/or judgment to furnish the Rescue It Products for their intended use, and Defendants knew or should have known that these customers relied on Defendants' special knowledge.

111. Plaintiffs and the members of the Class relied upon the promises contained within Defendants' warranties and believed that Defendants' designs, work, and materials were high quality, long lasting, and fit for their intended use and purpose.

112. Defendants breached said warranty by designing, developing, manufacturing, distributing, marketing, and/or selling defective Rescue It Products, which were not high quality, long lasting, or fit for their intended use.

113. Defendants provided a defective product and failed to properly inspect, test, and identify defects in the Rescue It Products.

114. But for Defendants' conduct alleged herein and their breach of implied warranty, Plaintiffs and the members of the Class would not have suffered the damages and losses alleged herein.

115. Defendants have been notified of the defective nature of Rescue It Products and of their breach of warranty within a reasonable time of their discovery.

116. As a direct and proximate result of Defendants' breach of implied warranty, Plaintiffs and the Class members have suffered and will continue to suffer damages and losses in an amount to be proven at trial.

**COUNT IV**
**BREACH OF WARRANTY OF MERCHANTABILITY**

117. Plaintiffs re-allege and incorporate by reference paragraphs 1-116 above.

118. Defendants designed, developed, tested, manufactured, distributed, marketed, and/or sold the Rescue It Products for purposes of their eventual use on customers' decks, porches, homes, and other structures. Plaintiffs and the members of the Class relied on the promises contained within Defendants' warranties that the Rescue It Products were free from defects.

119. The Rescue It Products were not fit for the ordinary purpose for which those products are intended to be used.

120. Defendants expected Plaintiffs and the members of the Class to use the Rescue It Products on their decks, porches, homes, and other structures, and such use was reasonably foreseeable. The Rescue It Products sold by Defendants were not merchantable at the time they were sold.

121. Defendants knew and/or should have known that the Rescue It Products were defective and not of acceptable quality as designed.

122. Defendants knew and/or should have known that the Rescue It Products were not generally fit for the ordinary purpose for which they were intended to be used, as they were defective and not of acceptable quality as designed.

123. Defendants knew and/or should have known that these Rescue It Products would reach the end user without substantial change and in the condition in which they were sold.

124. Defendants' Rescue It Products failed in their ordinary and intended use.

125. Defendants have been notified of the defective nature of the Rescue It Products and of their breach of warranty within a reasonable time of their discovery.

126. But for the Defendants' conduct alleged herein and their breach of warranty of merchantability, Plaintiffs and the members of the Class would not have suffered the damages and losses alleged herein.

127. As a direct and proximate result of Defendants' breach of warranty of merchantability, Plaintiffs and the members of the Class have suffered and will continue to suffer damages and losses in an amount to be proven at trial.

## COUNT V
## NEGLIGENCE

128. Plaintiffs re-allege and incorporate by reference paragraphs 1-127 above.

129. Defendants owed a duty to Plaintiffs and the members of the Class to exercise reasonable care in the design, manufacture, quality control, and marketing of Rescue It

Products, and to disclose to consumers the foreseeable risks associated with the use of their defective products. Defendants had a further duty not to put defective products such as Rescue It Products on the market.

130. Defendants breached this duty by designing, manufacturing, selling, advertising, and/or warranting a defective product, and by failing to take those steps necessary to replace, repair, or otherwise discontinue selling a defective product to consumers.

131. Defendants were aware, or reasonably should have been aware, that the Rescue It Products were defective and did not perform their intended use.

132. When they purchased the Rescue It Products, Plaintiffs and the Class were not aware of their defective nature.

133. As a direct and proximate cause of the foregoing, Plaintiffs and the Class members have suffered and will continue to suffer damages and losses in an amount to be proven at trial.

## COUNT VI
## STRICT PRODUCTS LIABILITY

134. Plaintiffs re-allege and incorporate by reference paragraphs 1-133 above.

135. At all times during the Class period, Defendants were commercial manufacturers and/or suppliers of the Rescue It Products.

136. The Rescue It Products were expected to, and did in fact, reach consumers without substantial change in the condition in which they were supplied.

137. Defendants' Rescue It Products were and are defectively designed and/or manufactured, and were and are unfit for their intended use.

138. The Rescue It Products fail to perform in accordance with the reasonable expectations of Plaintiffs and the Class, and the benefits of the design of the Rescue It Products do not outweigh the risk of their failure.

139. Defendants have a duty and responsibility to disclose to the consuming public the foreseeable risks associated with the use of Rescue It Products. Defendants further have a duty not to put defective products on the market or to offer a proper substitute.

140. Defendants breached this duty by failing to disclose the defects that they knew were associated with the Rescue It Products, and by allowing the sale and use of the Rescue It Products when Defendants knew they would not perform as intended.

141. The defective Rescue It Products caused, among other damages and expense, property damage to the decks, porches, homes, and other structures where the Rescue It Products were applied and costs associated with the repair and/or replacement of the defective products and damage caused thereby.

142. As a direct and proximate cause of the foregoing, Plaintiffs and the Class members have suffered and will continue to suffer damages and losses in an amount to be proven at trial.

**<u>COUNT VII</u>**
**UNJUST ENRICHMENT**

143. Plaintiffs re-allege and incorporate by reference paragraphs 1-142 above.

144. As the intended and expected result of their conscious wrongdoing, Defendants have profited and benefited from the purchase of Rescue It Products by Plaintiffs and the Class.

145. Defendants have voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Defendants' misconduct, Plaintiffs and the Class were not receiving products of the quality, nature, fitness, or value that had been represented by Defendants, and that reasonable consumers expected.

146. Defendants have been unjustly enriched by their fraudulent and deceptive withholding of benefits to Plaintiffs and the Class, at the expense of these parties.

147. Equity and good conscience militate against permitting Defendants to retain these profits and benefits.

**<u>COUNT VIII</u>**
**VIOLATION OF THE OHIO DECEPTIVE TRADE PRACTICES ACT, OHIO REV. CODE ANN. § 4165.01, *ET SEQ.* ("ODTPA")**
**(On Behalf of the Ohio Class)**

148. Plaintiffs re-allege and incorporate by reference paragraphs 1-147 above.

149. The ODTPA is codified at OHIO REV. CODE ANN. § 4165.01, *et seq.* The statute permits a "person" who is injured or who is likely to be injured as a result of a deceptive

practice to bring an action under the ODTPA. OHIO REV. CODE ANN. § 4165.03(A)(1)-(2).

150. The ODTPA defines a "person" broadly to include, *inter alia*, a corporation, business trust, partnership, unincorporated association, and limited liability company. OHIO REV. CODE ANN. § 4165.01(D). As such, Plaintiff Traxler and Class members are "persons" within the meaning of the ODTPA.

151. Defendants' conduct alleged herein violated the ODTPA by virtue of Defendants doing the following in the course of business:

a) Causing a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods;

b) Causing a likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

d) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

e) Advertising goods or services with intent not to sell them as advertised.

152. As a direct and proximate result of Defendants' conduct as alleged herein and resulting violations of the ODTPA, Plaintiff Traxler and the Ohio Class have been injured, entitling Plaintiff Traxler and the Ohio Class to actual damages, injunctive relief, reasonable attorneys' fees due to Defendants' willful engagement in the conduct described herein, and all other relief that this Court deems appropriate.

**COUNT IX**
**VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT, OHIO REV. CODE ANN. § 1345.01, *ET SEQ*. ("OCPSA")**
**(On Behalf of the Ohio Class)**

153. Plaintiffs re-allege and incorporate by reference paragraphs 1-152 above.

154. The OCPSA is codified at OHIO REV. CODE ANN. § 1345.01, *et seq.* The statute is broad, applying to the sale of consumer goods "to an individual for purposes that are primarily personal, family, or household [uses]." OHIO REV. CODE ANN. § 1345.01(A). Accordingly, the conduct at issue in this case clearly falls within the scope of the OCPSA.

155. The OCPSA prohibits unfair, deceptive, and unconscionable practices in consumer sales transactions. OHIO REV. CODE ANN. § 1345.02(A). The OCPSA further provides that "a consumer" has a private cause of action for violations of the statute, and expressly allows for class actions. OHIO REV. CODE ANN. § 1345.09.

156. Defendants' conduct, as alleged herein, has been unfair, deceptive, and unconscionable for purposes of the OCPSA.

157. Defendants acted in the face of prior notice that their conduct was deceptive,

unfair, or unconscionable. Material omissions and misrepresentations concerning a product constitute a violation of the statute. It is also a deceptive act or practice for purposes of the OCPSA if a supplier makes representations, claims, or assertions of fact in the absence of a reasonable basis in fact. *See* OHIO ADMIN. CODE. § 109:4-3-10(A).

158. As a direct and proximate result of Defendants' violations of the OCPSA, Plaintiff Traxler and the Ohio Class have been injured.

**159.** Plaintiff Traxler and the Ohio Class have suffered injuries in fact and actual damages, including financial losses and property damage, resulting from the defective Rescue It Products due to Defendants' violations of the OCPSA. These injuries are of the type that the OCPSA was designed to prevent and are the direct and proximate result of Defendants' unlawful conduct.

## COUNT X
## VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 Pa. C.S.A. §§ 201-1, *ET SEQ*. ("UTPCPL")
## (On Behalf of the Pennsylvania Class)

**160.** Plaintiffs re-allege and incorporate by reference paragraphs 1-159 above.

**161.** Plaintiff Banyas brings this count individually and on behalf of the other members of the Class and Pennsylvania Class defined above.

**162.** The conduct alleged above constitutes unfair methods of competition or unfair or deceptive acts or practices in violation of Section 201-2(4)(v),(vii), (xiv) and (xxi) of the UTPCPL, 73 Pa. C.S.A. §§ 201-1, *et seq*.

**163.** The UTPCPL applies to the claims of Plaintiff Banyas and the Pennsylvania Class because the conduct which constitutes violations of the UTPCPL by Defendants occurred in substantial part within the Commonwealth of Pennsylvania.

**164.** Plaintiff Banyas and the Pennsylvania Class are consumers who purchased Defendants' Rescue It Products primarily for personal, family or household purposes within the meaning of 73 Pa. C.S.A. § 201-9.2.

**165.** Defendants used and employed unfair methods of competition and/or unfair or deceptive acts or practices within the meaning of 73 Pa. C.S.A. §§ 201-2 and 201-3.

**166.** Defendants' concealments, omissions, deceptions and conduct were likely to deceive and likely to cause misunderstanding and/or in fact caused Plaintiff Banyas and the Pennsylvania Class to be deceived.

**167.** Defendants intended that Plaintiff Banyas and the Pennsylvania Class would rely on their misrepresentations, concealment, warranties, deceptions and/or omissions.

**168.** Plaintiff Banyas and the Pennsylvania Class have been damaged as a proximate result of Defendants' violations of the UTPCPL and have suffered actual, ascertainable losses.

**169.** As a direct and proximate result of Defendants' violations of the UTPCPL as set forth above, Plaintiff Banyas and the Pennsylvania Class have suffered an ascertainable loss of money and are therefore entitled to relief, including damages, plus triple damages, costs and attorneys' fees under Section 201-9.2 of the UTPCPL.

**170.** To the extent that justifiable reliance is required to be pleaded, Plaintiff Banyas and the Pennsylvania Class have justifiably relied on the Defendants' conduct and/or omissions as alleged herein in purchasing Defendants' Rescue It Products.

## <u>COUNT XI</u>
## VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT, WASH. REV. CODE § 19.86.010, *ET SEQ*. ("WCPA")
## (On Behalf of the Washington Class)

**171.** Plaintiffs re-allege and incorporate by reference paragraphs 1-170 above.

**172.** Plaintiff Kinsfather brings this count individually and on behalf of the Washington Class defined above.

173. The WCPA, Wash. Rev. Code § 19.86.010, *et seq.*, prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

174. Defendants' misrepresentations and material omissions regarding the defective nature of Rescue It Products constitute unfair or deceptive acts or practices in violation of the WCPA.

**175.** Defendants' deceptive or unfair practices took place in the course of trade or commerce.

**176.** Defendants intended for Plaintiff Kinsfather and the Washington Class to rely on these deceptive and unfair practices when they purchased Rescue It Products.

**177.** Plaintiff Kinsfather and the Washington Class have suffered injuries in fact and actual damages, including property damage, resulting from Defendants' violation of the WCPA as alleged herein. These injuries are of the type that the WCPA was designed to prevent, and are the direct and proximate result of Defendants' unlawful conduct.

**178.** Defendants' conduct has damaged consumers who have purchased Rescue It Products; will continue to damage consumers who purchase Rescue It Products; and has negatively impacted and will continue to negatively impact the public interest.

**COUNT XII**
**VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, N.C. GEN. STAT. §§ 75-1.1, *ET SEQ*. ("NCUDTPA")**
**(On Behalf of the North Carolina Class)**

**179.** Plaintiffs re-allege and incorporate by reference paragraphs 1-178 above.

180. Plaintiff Morrison brings this Count individually and on behalf of the North Carolina Class.

181. The NCUDTPA, N.C. Gen. Stat. §§ 75-1.1, *et seq.*, prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.

182. Defendants' acts and practices complained of herein were performed in the course of Defendants' trade or business and thus occurred in or affected "commerce," as defined in N.C. Gen. Stat. § 75-1.1(b).

183. In the course of Defendants' business, they willfully failed to disclose and actively concealed the risk of failure in Rescue It Products as described above. Accordingly, Defendants engaged in unlawful trade practices, including representing that the Rescue It Products have characteristics, uses, benefits, and qualities which they do not have;

representing that Rescue It Products are of a particular standard and quality when they are not; advertising Rescue It Products with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

184. Defendants' conduct proximately caused injuries to Plaintiff Morrison and the North Carolina Class.

185. Defendants acted with willful and conscious disregard of the rights and property of others, subjecting Plaintiff Morrison and the North Carolina Class to cruel and unjust hardship as a result, such that an award of punitive damages is appropriate.

186. Plaintiff Morrison and the North Carolina Class were injured as a result of Defendants' conduct in that they overpaid for Rescue It Products and did not receive the benefit of their bargain, and as a result of the failures of Rescue It Products their properties have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

187. Plaintiff, and the North Carolina Class, seek treble damages pursuant to N.C. Gen. Stat. § 75-16, and an award of attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered upon Defendants as follows:

a. For economic and compensatory damages on behalf of Plaintiffs and the Class;

b. For restitution;

c. For actual damages sustained and for trebled damages as authorized by relevant consumer fraud statutes.

d. For punitive damages, as otherwise applicable;

e. For declaratory relief, including but not limited to declarations that:

i) all of the Rescue It Products have defects necessitating removal and replacement; and

ii) all of the Rescue It Products have defects in material that causes failures;

f. For injunctive relief, including but not limited to an injunction requiring that:

i) Defendants shall re-audit and reassess all prior claims concerning defects in the Rescue It Products; and

ii) Defendants shall establish an inspection program and protocol to be communicated to Class members, which will require Defendants to inspect, upon request, a Class member's structure to determine whether a Product failure is manifest.

g. For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

h. For such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims so triable.

Dated: May 8, 2015

Respectfully submitted,

By: */s/ Thomas A. Muzilla*

**THE MUZILLA LAW FIRM, LLC**
Thomas A. Muzilla, Esquire (OH 0037662)
2996 Kingsley Road
Cleveland, Ohio 44122
Telephone: (216) 401-8607
E-mail: tom@muzillalaw.com

**CHIMICLES & TIKELLIS LLP**
Joseph G. Sauder, Esquire
Matthew D. Schelkopf, Esquire
Andrew W. Ferich, Esquire
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
E-mail: JGS@chimicles.com
MDS@chimicles.com
AWF@chimicles.com

**THE MALONE FIRM, LLC**
Thomas B. Malone, Esquire
1650 Arch St., Suite 1903
Philadelphia, PA 19103
Telephone: (215) 987-5200
E-mail: tmalone@themalonefirm.com

**LITE DEPALMA GREENBERG, LLC**
Katrina Carroll, Esquire
Kyle A. Shamberg, Esquire
211 W. Wacker Drive, Suite 500
Chicago, Illinois 60606
Telephone: (312) 750-1265
E-mail: kcarroll@litedepalma.com
kshamberg@litedepalma.com