**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **MATTHEW W. TRAXLER, ANGIE** )<br>**BANYAS, ALEX KINSFATHER,** )<br>**CHRIS MORRISON, DIANA JUDD,** )<br>**NANCY KRESS, RICHARD CONWAY,** )<br>**DAVID KRESS, RICHARD CONWAY,** )<br>**DAVID NAEGER, SANDRA HOWARD,** )<br>**individually and on behalf or all others** )<br>**similarly situated,** )<br> )<br> **Plaintiffs,** )<br> )<br> **vs.** )<br> )<br>**PPG INDUSTRIES, INC., et al.,** )<br> )<br> **Defendants.** ) | **CASE NO.  1:15 CV 912**<br><br>**JUDGE DAN AARON POLSTER**<br><br><u>**OPINION AND ORDER**</u> |

Presently before the Court is the Motion to Dismiss of Defendants PPG Industries, Inc.,

PPG Architectural Finishes, Inc., and PPG Architectural Coatings, LLC (collectively,

"Defendants" or "PPG").  (**Doc #: 26** ("Motion")).  The Court notes that the Motion does not

seek dismissal of all claims.  Specifically, Defendants do not seek dismissal of the claims for

breach of the implied warranty of merchantability brought by Plaintiffs residing in the States of

Massachusetts, Michigan and Missouri (Count IV).  Nor do they seek dismissal of the

Magnuson-Moss Warranty Act claims brought by the same Plaintiffs based on their

merchantability claims (Count I).  Having reviewed the Motion, Plaintiffs' opposition brief

(Doc #: 30), and PPG's reply brief (Doc #: 32), and the record, the Court is prepared to issue its

ruling.

**I.**

This putative class action arises from PPG's marketing and sale of Olympic® Rescue It!® branded products for resurfacing worn or weathered wood and concrete ("Rescue It! Products" or "Products") to consumers residing in nine states[1] who purchased the Products from Lowe's or another retailer.[2] Plaintiffs allege that PPG made a host of misrepresentations about the quality, durability and longevity of these Products so that Plaintiffs would rely upon them when deciding whether to purchase PPG's Products or those of its competitors. Furthermore, contrary to PPG's representations, the Products are plagued by latent defects that prevent the Products from properly adhering to the underlying decking or concrete, routinely causing the Products to bubble, crack and peel, damaging the decks to which they are applied and resulting in diminished property value. Plaintiffs allege that PPG had actual notice of these problems via publicly available customer complaints on PPG's website, Lowe's website, and direct interaction with customer service representatives, and sought to mask the deficiencies inherent in the Products by regularly redesigning their website, re-editing promotional videos, and altering product preparation and application instructions–all in an effort to shift the blame for the defects onto its customers. Finally, PPG continues to market and sell the Products to millions of unsuspecting consumers despite knowing they are not fit for their intended purpose and are destined to fail prematurely.

---

[1]The following indicates Plaintiffs' home states: Matthew Traxler (Ohio), Angie Banyas (Pennsylvania), Alex Kinsfather (Washington), Chris Morrison (North Carolina), Diana Judd (California), Nancy Kress (Massachusetts), Richard Conway (New York), David Naeger (Missouri), and Sandra Howard (Michigan). (See First Amended Complaint ("FAC") ¶¶ 7-15.)

[2]The only named plaintiff who is not alleged to have purchased her Rescue It! Product at Lowe's is Sandra Howard (Michigan).

Based on these factual allegations, Plaintiffs from nine states bring the following claims against PPG.[3]  Count I alleges express and implied warranty claims under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1).  Count II seeks declaratory, injunctive, or equitable relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.  Count III alleges breach of express warranty.  Count IV alleges breach of the implied warranty of merchantability under the laws of Ohio, Pennsylvania, Washington, California, Michigan, Massachusetts, and Missouri.  Count V alleges breach of the implied warranty of merchantability under the laws of New York and North Carolina.  Count VI alleges breach of the implied warranty of fitness for a particular purpose under the laws of Ohio, Pennsylvania, Washington, California, Michigan, Massachusetts, and Missouri. Count VII allege breach of the implied warranty of fitness for a particular purpose under the laws of New York and North Carolina.  Count VIII alleges a claim for unjust enrichment.  Counts IX through XIX allege claims under the consumer protection and false advertising statutes of Plaintiffs' home states (Counts IX to XIX).

## II.

When determining whether Plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in the light most favorable to the Plaintiff, accepting all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*

---

[3]Plaintiffs purport to bring this action on behalf of a Nationwide Class or, in the alternative, on behalf of State Subclasses.  As no class has as yet been certified, the Court will analyze the pending motion as though a subclass of states has been certified.

Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.*  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), further explains the "plausibility" requirement, stating, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 566).  Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.*  This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  Importantly, while courts must construe *pro se* complaints liberally in favor of the plaintiff, they too must satisfy the "facial plausibility" standard articulated in *Twombly*.

**III.**

**A.    Express Warranty (Count III)**

The following express limited warranty at issue in Count III is written on the label appended to all cans of Rescue It! Products purchased by Plaintiffs, and provides:

> Since 1938 more people have protected the natural beauty of their homes with OLYMPIC than any other stain.  Olympic guarantees your satisfaction with the application and performance properties of this product when applied to a properly prepared surface in accordance with label directions.  OLYMPIC MAKES NO OTHER EXPRESS WARRANTIES.  IF THE PRODUCT FAILS TO CONFORM TO THIS LIMITED WARRANTY, OLYMPIC WILL, AT YOUR OPTION, FURNISH REPLACEMENT PRODUCT OR REFUND THE PURCHASE PRICE.  LABOR, COSTS OF LABOR FOR THE APPLICATION

> OR REMOVAL OF ANY PRODUCT, AND ALL OTHER DIRECT,
> INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES ARE
> SPECIFICALLY EXCLUDED.  To make a claim under this Limited Warranty,
> supply dated proof of purchase to the store where you purchased the product or to
> OLYMPIC, One PPG Place, Pittsburgh, PA 15272.  This Limited Warranty gives
> you specific legal rights, and you may also have other rights that vary from state
> to state.  Some states do not allow the exclusion or limitation of incidental or
> consequential damages so the above exclusion or limitation may not apply to you.

(Doc #: 26-2, at 2 of 15.)  The express limited warranty on PPG's website currently provides:

> Warranty: Olympic guarantees satisfaction with the application and performance
> properties of this product when applied to a properly prepared surface in
> accordance with label directions.  This guarantee is limited to your choice of
> product replacement or refund of the purchase price.

See http://www.olympic.com/products/olympic-rescue-it-wood-and-concrete-resurfacer.

PPG's limited warranty on the labels has three essential features: (1) it guarantees satisfaction with the product when applied to a properly prepared surface in accordance with the label's directions, (2) it provides that PPG will refund the purchase price or provide replacement product to a dissatisfied customer upon request, and (3) it prohibits the buyer from recovering consequential (and other) damages.  The limited warranty on PPG's website has two essential features: (1) it guarantees satisfaction with the product when applied to a properly prepared surface in accordance with the label's directions, and (2) it provides that PPG will refund the purchase price or provide replacement product.  Notably missing from the website-warranty is a provision excluding consequential damages.

Assuming for purposes of argument that the label-warranty subsumes the website-warranty, PPG contends that its limitation of remedies and exclusion of consequential damages complies with the Uniform Commercial Code ("UCC" or "Code") of Plaintiffs' home states.  Because Plaintiffs do not allege that they were unsatisfied with the Product <u>and</u> PPG failed to

honor their request for refund or replacement product, they fail to state a claim for breach of express warranty.  In support of this contention, PPG cites cases from each home state wherein courts have rejected claims for damages beyond repair or replacement where the seller's warranty contains an exclusive remedy clause similar to the one at issue, or excludes consequential damages, or does both.  (See cases listed at Doc #: 26-1, at 20 nn.7, 8.)

Plaintiffs argue that PPG's express limitation of remedies to refund or replacement fails of its essential purpose because the Products are inherently defective, and its exclusion of consequential (and other) damages is unconscionable and unenforceable.  Plaintiffs also argue that PPG has made numerous objectively measurable affirmations of fact "including resistance to water, temperature, cracking and peeling" which give rise to additional express warranties.  PPG counters that those representations are nothing more than advertising puffery for which it has no liability.

### 1. Failure of Essential Purpose

The general rule is that a seller may legitimately limit the buyer's remedies to "return of the goods and repayment of the purchase price or to repair and replacement of nonconforming goods or parts."  O.R.C. 1302.93(A)(1).[4]  *See also Zaremba v. Marvin Lumber and Cedar Co.*, 458 F.Supp.2d 545, 549 (N.D. Ohio 2006).  "The purpose of limiting a consumer's remedy to repair or replacement is to grant a seller the opportunity to cure the defect, yet reduce its risks."  *Id.* (citing *Abele v. Bayliner Marine Corp.*, 11 F.Supp.2d 955, 960 (N.D. Ohio 1997)).  Such clauses are generally upheld unless a seller is unable or unwilling to comply within a reasonable

---

[4] See also Cal Com. Code § 2719(3); Mass. Gen. Laws ch. 106, § 2-719(3); Mich. Comp. Laws § 440.2719(3); Mo. Rev. Stat. § 400.2-719(3); N.Y. U.C.C. Law § 2-719(3); N.C. Gen. Stat. § 25-2-719(3); 13 Pa. Cons. Stat. § 2719(c); Wash. Rev. Code § 62A.2-719(3).

time.  *Id.* (citing *Chemtrol*, 42 Ohio St.3d at 56).  However, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., and 1310. of the Revised Code." O.R.C. 1302.93(B).[5]  Those remedies include consequential and incidental damages.  O.R.C. 1302.89.[6]

Whether an exclusive-remedy provision in a limited warranty has failed of its essential purpose is a question of fact.  *Lincoln Elec. Co. v. Technitrol, Inc.*, No. 1:08 CV 2346, 2010 WL 2219341, at *4 (N.D. Ohio Jun. 2, 2010) (citing *Malkimaki v. Sea Ray Boats, Inc.*, 411 F.Supp.2d 737, 745 (N.D. Ohio 2005) and *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 56 (Ohio 1989)).[7]  A limited or exclusive remedy can fail of its essential purpose if it deprives the purchaser of the substantial value of its bargain, leaving the purchaser without a remedy.  *Id.* (citing *Daniel A. Terrieri and Sons, Inc. v. Alliance Wall Corp.*, No 95 C.A. 11, 1996 WL 148596, at *5 (Ohio Ct. App. Mar. 29, 1996)); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *5 (N.D. Calif. Jun. 5, 2009) (citing *Computerized Radiological Servs., Inc. v. Syntex Corp.*, 595 F.Supp. 1495, 1510 (E.D.N.Y. 1984), *aff'd in part and rev'd in part*, 786 F.2d 72 (2d Cir. 1986)).  "A purchaser can be deprived of the value of its

---

[5]See also id.

[6]Cal Com. Code § 2715; Mass. Gen. Laws ch. 106, § 2-715; Mich. Comp. Laws § 440.2715; Mo. Rev. Stat. § 400.2-715; N.Y. U.C.C. Law § 2-715; N.C. Gen. Stat. § 25-2-715; 13 Pa. Cons. Stat. § 2715; Wash. Rev. Code § 62A.2-715.

[7]*See also Demorato v. Carver Boat Corp.*, 304 F.App'x. 100, 102 (3d Cir. Dec. 19, 2008) (citing *Roneker v. Kenworth Truck Co.*, 944 F.Supp.179 (W.D.N.Y. 1996); *Woolums v. National RV*, 530 F.Supp.2d 691, 701 (M.D. Pa. 2008); *California State Auto. Ass'n Inter-Insurance Bureay v. Policy Mgt. Sys. Corp.*, No. C-93-4232 CW, 1996 WL 45280, at *8 (N.D. Cal. Jan. 9, 1996); *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703 (9th Cir. 1990); *Rothbaum v. Samsung Telecommunications America, LLC*, 52 F.Supp.2d 185, 205 (D. Mass. 2014).

bargain where the goods purchased under the contract contain latent defects, which are defects that are 'not detectable until it is impractical to effectuate the exclusive remedy.'" *Id.* (quoting *Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable and Cold Storage Co.*, 709 F.2d 427, 432 (6th Cir. 1983) (applying Washington law)).  More recently, in a factually similar case, the district court held that "factual inquiries–such as whether Restore had any latent defects present–will not be adequately determined absent discovery, and underlie the determination of whether an express warranty failed of its essential purpose." *In Re Rust-Oleum Restore Mktg., Sales Practices and Prod. Liab. Litig.*, Case No. 15-C-1364, at 21, MDL No. 2602, (N.D. Ill. Jan. 7, 2016).[8]

Standing in isolation, PPG's remedies-limitation and consequential damages-exclusion is typical of limited warranties on consumer products sold by retailers across the country, and they comply with the UCC of every state.  Thus, when a consumer is unsatisfied with a product, a refund of the purchase price or replacement with a new product is a reasonable remedy.

However, where a product is inherently defective, the remedy of a replacement product that is equally defective is meaningless.  *See, e.g., Sutphen Towers, Inc. v. PPG Indus., Inc.*, 2005 WL 3113450, at *8, 2005-Ohio-6207, (Ohio App. Dist., Nov. 22, 2005); *Concordia Yacht Builders, Inc. v. Hadar*, 886 F.Supp.1082, 1099-1100 (S.D.N.Y. 1995); *PDC Labs. Inc. v. Hach Co.*, No. 09-1110, 2009 WL 2605270, at *6 (C.D. Ill. Aug. 25, 2009).  And where the purchase

---

[8]*See also Viking Yacht Co., Inc. v. Composite One LLC*, 385 F.App'x 195, 208, 2010 WL 2616862, at *10 (3d Cir. 2010) (affirming the district court's holding that a remedies limitation failed of its essential purpose where the malfunction was latent, and the gel coat was combined into a larger product before use); *Garden State Food Distributors, Inc. v. Sperry Rand Corp., Sperry Univac Div.*, 512 F.Supp. 975, 978 (D.N.J. 1981); *Marr Enter., Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951, 955 (9th Cir. 1977); *Fiberglass Component Production, Inc. v. Reichhold Chem., Inc.*, 983 F.Supp.948, 960 (D.Colo. 1997); *Lutz Farms v. Asgrow Seed Co.*, 948 F.2d 638, 646 (10th Cir. 1991).

price is insignificant compared to the damages to the purchaser's property caused by the defect, the remedy of a refund represents "no remedy at all." *See, e.g., Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *5 (N.D. Calif. Jun. 5, 2009) (citing *Computerized Radiological Servs., Inc. v. Syntex Corp.*, 595 F.Supp. 1495, 1510 (E.D.N.Y. 1984), *aff'd in part and rev'd in part*, 786 F.2d 72 (2d Cir. 1986)); *Leprino v. Intermountain Brick Co.*, 759 P.2d 835, 837 (Colo. App. 1988) (finding failure of essential purpose where a latent defect was not discoverable until after use and significant damages occurred); *Viking Yacht Co., Inc. v. Composite One LLC*, 385 F.App'x 195, 208, 2010 WL 2616862, at *10 (3d Cir. 2010) (holding the same).

In the instant case, Plaintiffs from nine different states allege that, within a few months after properly applying the Rescue It! Products to their decks, the Products deteriorated prematurely, causing bubbling, cracking and peeling and damage to the underlying deck structures–corroborating their allegations with photographs of the damage.  (See FAC at 27-43.) Plaintiffs claim that the Rescue It! Products failed to live up to PPG's numerous representations about the Products' performance and are inherently, latently defective; consequently, the remedy of a replacement product or a refund is illusory, leaving plaintiffs with damage to their decks and diminished home value.  "[W]here an apparently fair and reasonable [remedies limitation] because of circumstances fails in its essential purpose and operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article."  O.R.C. 1302.93 cmt. 1.[9]  And  a limitation on remedies that leaves consumers without

---

[9]See also Cal Com. Code § 2719 cmt.1; Mass. Gen. Laws ch. 106, § 2-719 cmt. 1; Mich. Comp. Laws § 440.2719 cmt. 1; Mo. Rev. Stat. § 400.2-719 cmt. 1; N.Y. U.C.C. Law § 2-719 cmt. 1; N.C. Gen. Stat. § 25-2-719 cmt. 1; 13 Pa. Cons. Stat. § 2719 cmt. 1; Wash. Rev. Code § 62A.2-719 cmt. 1.

"at least a fair quantum of remedy" fails of its essential purpose.  Id.[10]  Because the failure of

essential purpose is a question of fact, dismissal at this time in inappropriate.

> ### 2.    Unconscionability

Generally speaking, a seller may legitimately limit or exclude recovery of consequential

damages "unless the limitation or exclusion is unconscionable."  UCC 2-719(c).[11]  Further, the

parties' agreement may lawfully "limit or alter the measure of damages recoverable . . . as by

limiting the buyer's remedies to return of the goods and repayment of the price or to repair and

replacement of non-conforming goods or parts."[12]  However, "[a] warranty disclaimer that leaves

a party with a defective product and no avenue for recourse against the manufacturer is

unconscionable."  *Zaremba*, 458 F.Supp.2d at 549 (citing *Westfield Ins. Co. v. HULS Am., Inc*.,

128 Ohio App.3d 270, 293 (1998) and *Irving Leasing Corp. v. M & H Tire Co*., 16 Ohio App.3d

191, 194-95 (1984)).

When considering a plaintiff's allegations of unconscionability, the parity of bargaining

power "bears some consideration" with regard to a claim of unconscionability.  *Zaremba*, 458

F.Supp.2d at 549.  "It is well settled that 'findings of unconscionability in a commercial setting

are rare."  *Id.* (citing *Chemtrol*, 42 Ohio St.3d at 55 (citing White & Summers, Uniform

---

[10]See also id.

[11]See Ohio Rev. Code § 1302.93(C); Cal. Com. Code § 2719(3); Mass. Gen. Laws ch. 106, § 2-719(3); Mich. Comp. Laws § 440.2719(3); Mo. Rev. Stat. § 400.2-719(3); N.Y. U.C.C. Law § 2-719(3); N.C. Gen. Stat. § 25-2-719(3); 13 Pa. Cons. Stat. § 2719(c); Wash. Rev. Code § 62A.2-719(3).

[12]Ohio Rev. Code § 1302.93(A)(1); Cal. Com. Code § 2719(1)(a); Mass. Gen. Laws ch. 106, § 2-719(1)(a); Mich. Comp. Laws § 440.2719(1)(a); Mo. Rev. Stat. § 400.2-719(1)(a); N.Y. U.C.C. Law § 2-719(1)(a); N.C. Gen. Stat. § 25-2-719(1)(a); 13 Pa. Cons. Stat. § 2719(c); Wash. Rev. Code § 62A.2-719(1)(a).

Commercial Code [1972] 385-86.).  *See also Graham Const. Servs., Inc. v. Hammer & Steel, Inc.*, 2012 WL 5438994, at *6 (E.D.Mo. Nov. 7, 2012) (citation omitted) (holding that "[d]isclaimers of consequential and incidental damages in commercial settings are generally enforceable under Missouri law.")  "[W]here there is no great disparity of bargaining power between the parties, a contractual provision which excludes liability for consequential damages . . . is not unconscionable."  *Id*.  Conversely, a significant disparity between the parties to a transaction also bears consideration.

The UCC does not define "unconscionability."  In applying the Code, however, courts have recognized that unconscionability has both a procedural and substantive element.  The procedural element focuses on oppression and surprise, which arise, respectively, from an inequality in bargaining power resulting in the absence of a  meaningful choice or hidden, unexpected terms.  *See, e.g., A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 486 (1982); *Oldham's Farm Sausage Co. v. Salco, Inc.*, 633 S.W.2d 177, 182 (Mo. Ct. App. 1982); *Penney v. First Nat'l Bank of Boston*, 433 N.E.2d 901, 905 (Mass. 1982); *Industralease Automated & Scientific Equip. Corp. v. R.M.E. Enter., Inc.*, 58 A.D.2d 482, 489 (N.Y. Sup. Ct. 1977).  The substantive element, on the other hand, turns on reasonableness.  Courts have found a term to be substantively suspect if it "reallocates the risks of the bargain in a objectively unreasonable or unexpected manner."  *A & M Produce Co*., 135 Cal.App.3d at 487*; Farrar & Farrar Farms v. Miller-St. Nazianz, Inc.*, 477 F.App'x 981, 988-89 (4th Cir. 2012) (applying North Carolina law and evaluating whether the term was "unreasonably favorable" to one party); *Industralease Automated & Scientific Equip. Corp*. 58 A.D.2d at 489 (applying New York law).

-11-

Plaintiffs contend that the exclusion of consequential and other damages in PPG's limited warranty is "procedurally and substantively unconscionable and thus fails under U.C.C. § 2-302."  (FAC ¶ 149).  The question before the Court is whether the clause limiting consumers' remedies to a refund or replacement product and excluding consequential and other damages is unconscionable.

Courts have found as unconscionable situations where the seller failed to disclose latent defects of which it had knowledge and the buyer had no meaningful choice in determining the warranty's terms.  *See, e.g., Martin v. Joseph Harris Co.*, 767 F.2d 296, 301-02 (6th Cir. 1995); *In re Porsche*, 880 F.Supp.2d at 822; *Siriano, et al. v. Goodman Mfg. Co., et al.*, No. 2:14 CV 1131, Doc #: 40, at 20-22 (S.D.Ohio Aug. 8, 2015); *Clark v. LG Elecs. USA, Inc.*, No. 13-485, 2013 WL 5816410, at *16 (S.D.Cal. Oct. 29, 2013).  Courts have also found as unconscionable situations where the disparity in cost between the refund and the damage the product caused was unconscionably low.  *Viking Yacht Co.*, 385 F.App'x at 201-02; *Lutz Farms*, 948 F.2d at 646; *Tokyo Ohka Kogyo Am. Inc. v. Huntsman Propylene Oxide, LLC*, 35 F.Supp.3d 1316, 1333-37 (D.Or. 2014).  And courts have found the exclusion of consequential damages unconscionable and unenforceable when a remedy that compelled the buyer to continue using a defective product failed of its essential purpose.  *Sutphen Towers, Inc.* , 2005 WL 3113450, at *8.

The Court finds that the question of unconscionability is another fact question rendering dismissal premature.[13]

---

[13]The Court notes that the website-warranty does not exclude consequential or any other damages.  This factor may well play into the Court's eventual analysis regarding deceptive business practices and fraudulent advertising.

-12-

### 3.    Advertising Puffery

Plaintiffs allege that the numerous representations PPG has printed on its labels, advertisements and website constitute express warranties that PPG has breached.  (FAC ¶¶ 142-147).  Defendants argue that these statements are "non-actionable opinions or advertising puffery" that do not create express warranties.  (Motion, at 10).  The UCC is clear.

> Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain, creates an express warranty that the goods shall conform to the affirmation or promise.

O.R.C. 1302.26(A)(1).[14]  But "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."  O.R.C. 1302.26(B).[15]

According to PPG, the only promise it makes, pursuant to its limited warranty, is satisfaction with its Rescue It! Products when applied to properly prepared surfaces in accordance with its directions.  Thus, all those representations printed on its labels and website amount to nothing more than puffery.  This begs the question, what exactly is PPG guaranteeing satisfaction with?  Put differently, what exactly is in those cans that PPG is selling?

A closer look at the warranty provides guidance:

> Olympic guarantees your satisfaction with the application and performance properties of this product when applied to a properly prepared surface in accordance with label directions.

What are those performance properties?  Looking at the labels alone, PPG makes the following

---

[14]See also Cal Com. Code § 2313; Mass. Gen. Laws 106, § 2-313; Mich. Comp. Laws § 440.2313; Mo. Rev. Stat. § 400.2-313; N.Y. U.C.C. Law § 400.2-313; N.C. Gen. Stat. § 25-2-313; 13 Pa..C.S.A. § 2313; Wash. Rev. Code § 62A.2-313.

[15]See also id.

-13-

representations regarding its Products' performance:

- WATERPROOFING PROTECTION

- RESISTS CRACKING AND PEELING

- PROVIDES A MILDEW RESISTANT COATING

- LOCKS DOWN SPLINTERS

- FILLS CRACKS UP TO 1/4"

- BAREFOOT FRIENDLY

- THE ULTIMATE REMEDY FOR SEVERELY WEATHERED OR DAMAGED WOOD OR CONCRETE

(FAC at 14.)

According to the UCC, "any description of the goods which is made part of the basis of

the bargain creates an express warranty that the goods shall conform to the description."  O.R.C.

1302.26(A)(2) (emphasis added).[16]  Official Comment 4 to UCC 2-313 explains,

> In view of the principle that the whole purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell, the policy is adopted of those cases which refuse except in unusual circumstances to recognize a material deletion of the seller's obligation.  Thus, a contract is normally a contract for a sale of something describable and described.  A clause generally disclaiming "all warranties, express or implied" cannot reduce the seller's obligation with respect to such description and therefore cannot be given literal effect under Section 2-316.

Id. (emphasis added).  Moreover,

> affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement.

---

[16]See also id.

-14-

UCC 2-313 cmt. 3.  Nor do Plaintiffs have to show that PPG had the specific intent to make affirmations of fact if a description of the goods is made part of the basis of the bargain.  Id.

The Court concludes that the representations PPG made about the performance properties of the Rescue It! Products on its labels form the basis of the bargain and constitute express warranties.  The Court rejects PPG's argument asking the Court to dismiss the express warranty claim on the basis that Plaintiffs failed to identify the precise representations upon which they relied when purchasing the Products.  Plaintiffs allege, and the Court presumes, that Plaintiffs read the description of the Products printed on the labels of the cans, and relied on those representations, before purchasing them.  *See also Bernick v. Jurden*, 293 S.E.2d 405, 413 (N.C. 1982) (holding that reliance should be inferred from the product's purchase where "the natural tendency of the representations made is such as to induce such purchase or use.")  In any event, where the description of the goods becomes the basis of the bargain, "no particular reliance on such statements need be shown."  UCC 2-313 cmt. 3.

Because the claim for breach of express warranty is riddled with questions of fact, the Motion to Dismiss this claim is denied.

**B.      Implied Warranty of Fitness for a Particular Purpose (Counts VI and VII)**

In Counts VI and VII, Plaintiffs allege breach of the implied warranty of merchantability against PPG.  Specifically, Plaintiffs assert that "Defendants impliedly warranted to Plaintiffs . . that the Rescue It! Products were of a certain quality, free from defects, fit for the ordinary purpose of resurfacing decks and similar structures, and suitable for providing protection to deck structures from harsh weather conditions and lasting longer than ordinary deck paints or stains." (FAC ¶¶ 155, 165.)

In Counts VI and VII, Plaintiffs assert that "Defendants impliedly warranted to Plaintiffs that the Rescue It! Products were of a certain quality, free from defects, fit for the ordinary purpose of resurfacing decks and similar structures, and fit for the particular purpose of providing protection to deck structures from harsh weather conditions and lasting longer than ordinary deck paints or stains."  (Id. ¶¶ 176, 187.)

In short, resurfacing decks and providing protection from harsh weather conditions and lasting longer than ordinary deck paints or stains is the ordinary purpose of Rescue It! Products.

Comment 2 to the Uniform Commercial Code's provision addressing the implied warranty of fitness for a particular purpose that has been adopted by all Plaintiffs' home states recognize that a plaintiff must identify a unique purpose that is distinct from the product's ordinary purpose:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.

See U.C.C. § 2-315 cmt. 2.  In addition, Plaintiffs' home states have repeatedly held that a plaintiff must plead a particular purpose different from the product's ordinary purpose in order to state a claim.  *See, e.g.*, *Gall v. Allegheny Cnty. Health Dep't*, 555 A.2d 786, 790 (Pa. 1989); *Maeder Bros. Quality Wood Pellets, Inc. v. Hammond Drives & Equip., Inc.*, Docket No. 320362, 2015 WL 1650814, at *6 (Mich. Ct. App. Apr. 14, 2015); *Am. Suzuki Motor Corp. v. Super. Ct.*, 44 Cal. Rptr. 2d 526, 528 n.2 (Cal. Ct. App. 1995); *Bryant v. Adams*, 448 S.E.2d 832, 842 (N.C. Ct. App. 1994); *Roshong v. Fitness Brands Inc.*, No. 3:10CV2656, 2012 WL 1899696, at *3 n.2 (N.D. Ohio May 24, 2012); *Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d

288, 297 (D. Mass. 2009); *Stepp v. Takeuchi Mfg. Co. (U.S.) Ltd.*, No. C07-5446RJB, 2008 WL 4460268, at *11 (W.D. Wash. Oct. 2, 2008); *Mastrangelo v. Howmedica*, 903 F. Supp. 439, 443 n.1 (E.D.N.Y. 1995).   In the instant case, Plaintiffs have failed to assert a particular purpose that is distinct from the ordinary purpose of Rescue It! Products.  In fact, the two purposes are substantially the same.

Moreover, the cases Plaintiffs cite in support of the claim for breach of the implied warranty of fitness for a particular purpose are unavailing.  In *Van Wyk v. Norden Labs., Inc.*, 345 N.W.2d 81, 85 (Iowa 1984), the court noted that "in some cases a buyer's particular purpose will be the same as the ordinary purpose for which a product is furnished."  Nevertheless, the court declined to hold that the plaintiffs' use was "an ordinary use which [the court] should consider as a particular use for warranty purposes."  *Id.*  Furthermore, in *Regina Grape Prods. Co. v. Supreme Wine Co.*, 260 N.E.2d 219, 221, the plaintiffs showed a particular purpose distinct from the ordinary purpose (i.e., the particular purpose for which the wine was to be used was in a mixture with sweet wine).  Finally, *Medallion Prods., Inc. v. H.C.T.V.*, No. 06C2597, 2007 WL 1022010 (N.D. Ill. Mar. 29, 2007), did not involve a fitness claim.  For these reasons, Counts VI and VII are dismissed.

## C.      Implied Warranty of Merchantability (Counts IV and V)

Counts IV and V assert claims for breach of the implied warranty of merchantability and, for reasons that will become apparent, will be addressed by the Court altogether.

### 1.      **Privity of Contract Requirement**

Count IV asserts this claim on behalf of Plaintiffs residing in California, Ohio, Pennsylvania, and Washington and states that no privity of contract is required between

Plaintiffs and PPG.[17]  PPG disagrees.

PPG is correct that California, Ohio and Washington Plaintiffs cannot state a claim for implied warranty of merchantability absent privity of contract.  In California, for example, where a purchaser of a product relies on representations made by a manufacturer in labels or advertising material, recovery from the manufacturer may be allowed on a theory of *express warranty* without a showing of privity.  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citing *Burr v. Sherwin Williams Co*., 42 Cal.2d 682, 696 (1954)).  Otherwise, the only exceptions to the privity requirement for merchantability claims are those for foodstuffs, pesticides, and pharmaceuticals, or where the end user is an employee of the purchaser.  *Id.* (citations omitted).  *See also McKinney v. Bayer Corp*., 744 F.Supp.2d 733, 756-57 (N.D. Ohio 2010) (citing *Curl v. Volkswagon of Am., Inc.*, 114 Ohio St.3d 266, 757-58 (2007)); *Chance v. Richards Mfg. Co., Inc.*, 499 F. Supp. 102, 104 (E.D. Wash. 1980) (holding that Washington "has consistently required contractual privity between the plaintiff and defendant" on claims for breach of an implied warranty as it relates to economic losses).

PPG is incorrect with respect to Pennsylvania, where the cases show that privity is no longer required for breach of implied warranty of merchantability claims.  *See Kassab v. Central Soya*, 246 A.2d 848, 852 (Pa. 1968) (eliminating the requirement of privity in breach of implied warranty cases); *Spagnol Enter., Inc. v. Digital Equip. Corp.*, 568 A.2d 948, 952 (Pa. Super. Ct. 1989) (holding that *Kassab* was "intended to apply to all breach of warranty cases brought under the warranty provisions of the Uniform Commercial Code for all types of damages, whether they

---

[17] Defendant does not dispute that Plaintiffs residing in Massachusetts, Michigan, and Missouri may bring merchantability claims against Defendant, which survive the Motion to Dismiss.

-18-

be personal injuries, damage to property, or economic loss"); *Moscatiello v. Pittsburgh Contractors Equip. Co.*, 595 A.2d 1198, 1203-04 (Pa. 1991) ("The law in Pennsylvania is clear that, for recovery for breach of implied warranties, a party need not prove 'privity of contract'").

Count V asserts the breach of the implied warranty of merchantability claim on behalf of Plaintiffs residing in New York and North Carolina, acknowledging that privity is required.[18] Because privity is required in California, Ohio, New York, North Carolina, and Washington, the Plaintiffs from these states must be in privity of contract with the Defendant in order to recover on a theory of breach of the implied warranty of merchantability.

The First Amended Complaint alleges the following in an attempt to avoid the privity requirement:

> Defendants were and are in privity with each of the Plaintiffs and class members by law or by fact. Plaintiffs have had sufficient direct dealings with Defendants or their authorized dealers, franchisees, representatives, and agents to establish privity of contract. Alternatively, Plaintiffs and class members are intended third-party beneficiaries of contracts, including express warranties, between Defendants and their dealers,…; Defendants' advertisements were aimed at Plaintiffs and class members, and Defendants' warranties were expressly written for the benefit of Plaintiffs and class members as end users of Rescue It Products. Defendants' authorized dealers,…on the other hand, were not intended to be the ultimate consumers of Rescue It Products and have no rights under the warranty agreements provided by Defendants; these intermediary entities made no changes to Defendants' product, nor made any additions to the warranties issued by

---

[18] Initially, Plaintiffs claimed that privity was required in New York in their Complaint (Compl. ¶ 172). However, in their Memorandum in Opposition, Plaintiffs now claim that New York does not require privity (Mem. in Opp. at 15). The case Plaintiffs cite to support this contention is unpersuasive. In *Heller v. U.S. Suzuki Motor Corp.*, 477 N.E.2d 434, 436 (N.Y. 1985), the court held that the New York legislature "completely eliminated the requirements of privity for personal injury actions based on implied warranty." This case does not involve personal injuries. The case of *Adirondack Combustion Techs., Inc. v. Unicontrol, Inc.*, 17 A.D.3d 825, 827 (N.Y. 2005) demonstrates that New York does in fact require privity in breach of implied warranty cases ("A claim based upon a breach of an implied warranty requires a showing of privity between the manufacturer and the plaintiff when there is no claim for personal injuries").

Defendants.  Accordingly, Defendants are estopped from limiting claims for common law and statutory violations based on a defense of lack of privity.

(Compl. ¶ 172).  The Plaintiffs appear to argue two exceptions to the privity requirements of New York and North Carolina.  Because privity is also required in California, Ohio, and Washington, Plaintiffs presumably would assert the above exceptions in these states as well.  The two exceptions of "direct dealings" and third-party beneficiaries are discussed below.

### 2. "Direct Dealings" or Agency

Plaintiffs allege that Defendants "had direct dealings with Plaintiffs and putative class members through agents, dealer, and/or representatives," which is sufficient to support an exception to the privity requirement.  (Mem. in Opp. at 15).  However, the Plaintiffs' argument is flawed for several reasons.  First, Plaintiffs do not sufficiently allege that Lowe's was acting as Defendant's agent.  In fact, Plaintiffs allege nothing more than conclusory statements that they had "direct dealings" with the supposed agents.  (*See* Rep. Br. at 16-17).  Even if the states below recognized an agency exception to the privity requirement, Plaintiffs have failed to demonstrate facts sufficient to support such an argument.

Second, the only case Plaintiffs cite to support the "direct dealings" argument is unavailing.  In *Daitom, Inc. v. Pennwalt Corp.*, No. CIV. A. 80-2080, 1987 WL 93958, at *2 (D. Kan. Jan. 30, 1987), the court rejected an argument based on horizontal privity and held that the case involved a question of "vertical, not horizontal, privity."  *Id.*.  Horizontal privity is concerned with an individual who "is not a buyer within the distribution chain but…who consumes or uses or is affected by the goods."  *Id.* (quoting J. White and R. Summers, *Uniform Commercial Code* § 11-2).  The court then recognizes the agency principle in cases in which a "person who makes a contract with an agent of an *undisclosed principal* as if the principal

himself had made the contract with him." *Id.* at *4 (quoting *Restatement (Second) of Agency* § 302) (emphasis added). Here, PPG is not an undisclosed principal, and this case is distinguishable from *Daitom*. Furthermore, this is a Kansas case. We must examine California, Ohio, New York, North Carolina, and Washington case law in order to determine whether the exception applies.

### a.    California

California courts have rejected the "direct dealings" argument as an exception to the privity requirement where the plaintiff does not sufficiently demonstrate the agency relationship. In *In re Sony PS3 Other O.S. Litig.*, No. C 10-1811 RS, 2011 WL 672637, at *3 (N.D. Cal. Feb. 17, 2011), the court rejected "direct dealings" between the manufacturer and the plaintiffs as a basis for privity. The court further found that no privity existed where the plaintiffs purchased their gaming systems from retailers and never made direct payments to Sony. *Id.*[19] Here, the Plaintiffs did not make direct payments to Defendant. Rather, they purchased Rescue It! Products from a nationwide retailer with several operating chains. Thus, the Plaintiffs' claim of "direct dealings" does not pass muster in California.

### b.    Ohio

Ohio has also rejected the "direct dealings" argument where the agency relationship between the manufacturer and the retailer is not clear. In *Curl v. Volkswagen of Am.*, 871 N.E.2d 1141, 1148 (Ohio 2007), the court held that the principles of agency did not create privity in regard to a motor vehicle manufacturer and distributor. The court noted that "[o]ne who receives

---

[19]California does recognize an exception to the privity requirement in regard to foodstuffs. *See Tapia v. Davol*, No. 15CV179-GPC(JLB), 2015 WL 4544507, at *7 (S.D. Cal. Jul. 28, 2015).

goods from another for resale to a third person is not thereby the other's agent in the transaction: whether he is an agent for this purpose or is himself a buyer depends upon whether the parties agree that his duty is to act primarily for the benefit of the one delivering the goods to him or is to act primarily for his own benefit."  *Id.*  The Plaintiffs in the instant case do not sufficiently allege that it was the duty of Lowe's to act in such a way.  Therefore, this argument fails in Ohio as well.  *But see Norcold, Inc. v. Gateway Supply Co.*, 798 N.E.2d 618, 628 (Ohio Ct. App. 2003) (acknowledging that "privity will lie between a manufacturer and an ultimate consumer if either the manufacturer is *so involved* in the sales transaction that the distributor merely becomes the manufacturer's agent") (emphasis added).

### c.    New York

Similarly, New York courts have required "cognizable proof of an agency relationship" in order to establish an exception to the privity requirement.  *Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp.*, 122 A.D.2d 25, 26 (N.Y. App. Div. 1986); *see also Leonard v. Tollycraft Corp.*, No. 88-CV-5809, 1989 WL 1128247, at *4-5 (S.D.N.Y. Oct. 19, 1989) (holding that in "the absence of privity of contract, a purchaser can recover from a remote manufacturer only for personal injury, not for economic loss" and rejecting an agency argument where the consumer had little interaction with the manufacturer).[20]   In *Leonard*, the court notes that the plaintiff's discussions with the manufacturer's representatives and the provision of warranties by the manufacturer do not create privity of contract.  *Leonard*, 1989 WL 1128247, at *4-5.  Here, the Plaintiffs do not even allege such minimal interactions with the Defendant.

---

[20] New York has recognized an exception to the privity requirement in the case of personal injuries.  *See Hole v. Gen. Motors Corp.*, 83 A.D.2d 715 (N.Y. App. Div. 1981).  However, as previously stated, this case does not involve personal injuries.

Rather, the Plaintiffs merely make the conclusory statement that they had "direct dealings" with the Defendant or their agents.  (FAC ¶ 172).  Absent more specific allegations of an agency relationship, the direct dealings argument does not stand under New York case law.

### d.  North Carolina

Like California, Ohio, and New York, North Carolina courts have continually declined to recognize privity of contract between a consumer and manufacturer.[21]  *See, e.g.*, *Gregory v. Atrium Door and Window Co.*, 415 S.E.2d 574, 575 (N.C. Ct. App. 1992) (holding that plaintiffs were in privity with the defendant-retailer from whom they purchased windows and doors but not with defendant-manufacturer who produced the windows and doors); *Richard W. Cooper Agency, Inc. v. Irwin Yacht and Marine Corp.*, 264 S.E.2d 768, 770 (N.C. Ct. App. 1980) (finding no privity between plaintiff-purchaser of boat and defendant-manufacturer of boat when the boat was purchased through a third-party retailer).  In fact, the Supreme Court of North Carolina has limited the exceptions to the privity requirement to warranties on foods, drinks, and insecticides on sealed containers.  *See Fowler v. Gen. Elec. Co.*, 252 S.E.2d 862, 864 (N.C. Ct. App. 1979).  Therefore, the Plaintiffs' argument of agency and "direct dealings" is not acceptable under relevant North Carolina case law, and privity is required.

### e.  Washington

Washington case law does not recognize a "direct dealings" or agency exception to the privity requirement in regard to claims for breach of the implied warranty of merchantability.

---

[21] Similar to other states, North Carolina has legislatively recognized an exception to the privity requirement for cases involving personal injuries.  *See* N.C. Gen. Stat. § 99B-2(b); *AT&T Corp. v. Medical Review of N.C., Inc.*, 876 F. Supp. 91, 95 (E.D.N.C. 1995).  This case, however, does not involve personal injuries.  North Carolina has also recognized an exception for foodstuffs.  *Cf. Tedder v. Bottling Co.*, 154 S.E.2d 337, 339 (N.C. 1967).

While Washington recognizes a third-party beneficiary exception to the privity requirement,[22] there is a complete lack of case law on the agency issue.  Washington courts have noted the policy concerns associated with the privity bar.  For instance, this rule of law allows the manufacturer "to hide behind the doctrine of privity when the product, which it induced the purchaser to buy, turns out to be worthless."  *Tex Enter., Inc. v. Brockway Standard, Inc.*, 66 P.3d 625, 629-30 (Wash. 2003).  Nevertheless, courts reason that these concerns are alleviated when the plaintiff is allowed to pursue a claim under breach of express warranty–an action for which privity is not required.  *Id.* at 630.  Here, the Plaintiffs have asserted a claim for breach of express warranty.  Thus, under Washington case law, there is no compelling reason to adopt an agency or "direct dealings" exception.

### 3.    Third-Party Beneficiaries

Alternatively, Plaintiffs assert that they are the known end users of the Rescue It! Products and, therefore, the intended third-party beneficiaries of any implied warranties.  This, Plaintiffs claim, acts as an exception to the privity requirement.  (FAC ¶ 172).  Nevertheless, Plaintiffs argue that the inquiry into third-party beneficiary status is fact-sensitive and not ripe for resolution at the pleading stage.  (Mem. in Opp. at 16).  Thus, Plaintiffs argue, the breach of the implied warranty of merchantability counts should not be dismissed.  However, Plaintiffs' reliance on *Sec'y of State for Def. v. Trimble Navigation Co.*, 484 F.3d 700 (4th Cir. 2007), is misplaced.  In *Sec'y of State for Def.*, the court proceeded with the inquiry into third-party beneficiary status at the motion-to-dismiss stage, citing an exception to the general rule.  *Id.* at

---

[22] The third-party beneficiary exception that Washington recognizes is discussed *infra* Part(b)(v).

-24-

709.  The court found that the relevant documents were before it and held that "a resolution of the third-party beneficiary issue [was] proper" at the motion-to-dismiss stage.  *Id.*

However, in *Dunkin' Donuts Franchised Rests., LLC v. Claudia I*, Civil Action No. 12-2010 LLC, 2013 WL 3716525, at *5 (E.D. Pa. July 15, 2013), the court refused to decide the third-party beneficiary argument because it involved "factual questions of intent."  *See also Kofa Int'l Ltd. v. JC Horizon Ltd.*, No. 98 CV 1324 JBW, 1999 WL 438474, at *2 (E.D.N.Y. May 20, 1999) ("The question of whether an individual is the intended beneficiary of a contract requires a factual inquiry") (citing *Zucker v. Kid Gloves, Inc.*, 234 A.D.2d 598 (N.Y. App. Div. 1996)).

That said, the Court will review case law from the remaining states to determine whether those states recognize a third-party beneficiary exception to the privity requirement.

### a.    California

On this issue, California case law is somewhat inconsistent.  Courts have held that the privity requirement does not bar a consumer from asserting an implied warranty claim against a manufacturer when the consumer can show that he or she is a third-party beneficiary.  *See Gilbert Financial Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d  65, 69 (1978); *see also Roberts v. Electrolux Home Prod., Inc.*, No. CV 12-1644 CAS, 2013 WL 7753579, at *9-10 (C.D. Cal. Mar. 4, 2013); *Cartwright v. Viking Industries, Inc.*, 249 F.R.D. 351, 356 (E.D. Cal. 2008).  In these cases, courts held that where a plaintiff pleads that he or she is a third-party beneficiary to a contract that gives rise to the implied warranty of merchantability, he or she may assert a claim for the implied warranty's breach.  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prod. Liab. Litig.*,  754 F. Supp. 2d 1145, 1184-86

-25-

(C.D. Cal. Nov. 30, 2010); *see also In re MyFord Touch Consumer Litig.*, 47 F. Supp. 3d 936, 984 (N.D. Cal. 2014).[23]

Other California cases, however, have held that a third-party beneficiary argument is not an exception to the privity requirement.  *Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1083 (N.D. Cal. 2011) (holding that categorical exceptions to the privity requirement – while perhaps "wise policy" – do not exist in California jurisprudence).  In *Xavier*, the court went so far as to note that "[n]o reported California decision has held that the purchaser of a consumer product may dodge the privity rule by asserting that he or she is a third-party beneficiary of the distribution agreements linking the manufacturer to the retailer who ultimately made the sale."  *Id.* at 1083.  Ultimately, the applicability of the third-party beneficiary exception has varied among California courts and on a factual basis.

**b.     Ohio**

Ohio, and this Court in particular, has rejected the argument regarding third-party beneficiaries.  In *Savett v. Whirlpool Corp.*,  No. 12 CV 310, 2012 WL 3780451, at *10 (N.D. Ohio Aug. 31, 2012), this Court rejected a Home Depot customer's claim that he was a third-party beneficiary and therefore in privity with Whirlpool, the product manufacturer.  The Court noted that "longstanding Ohio jurisprudence provides that purchasers . . . may assert a contract claim for breach of implied warranty only against parties with whom they are in privity."  *Id.* (quoting *Curl*, 871 N.E.2d at 1141).  The Court found no reason to carve out this new exception. *Id.*  The Court also reasoned that, even if this were a recognized exception in Ohio, the plaintiff

_____

[23] Contrary to Defendant's suggestions, *In re Toyota* also held that the party need not be specifically named as the beneficiary of the contract.  *In re Toyota*, 754 F. Supp. 2d at 1184-86.  Rather, the party has to have experienced more than an incidental benefit from the contract in order to warrant third-party beneficiary status.  *Id.*

-26-

fell far short of establishing the status of a third-party beneficiary. *Id.* In fact, the only "bare allegation" that plaintiff made was a conclusory statement that "plaintiff and class members were intended–not merely incidental–third-party beneficiaries." *Id.*

The statement in *Savett* is strikingly similar to the Plaintiffs' allegations in this case. Plaintiffs claim that "Plaintiffs and class members are intended third-party beneficiaries of contracts" between Defendants and their dealers. (FAC ¶ 172). They make no other specific allegations supporting this contention. Absent some additional allegation, Plaintiffs' purchase of Rescue It! Products from Lowe's was a mere "downstream consumer transaction." *Savett*, 2012 WL 3780451, at *10.

### c. New York

New York recognizes an exception to the privity requirement for third-party beneficiaries in particular cases. *See Kofa*, 1999 WL 438474, at *2; *Zucker*, 234 A.D.2d at 599. Moreover, *Uniform Commercial Code* § 2–318, as adopted by New York, provides as follows:

> A seller's warranty whether express or implied extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and [who is injured in person] by breach of the warranty. A seller may not exclude or limit the operation of this section.

Thus, a third-party beneficiary argument is tenable where it is reasonable for the manufacturer to expect that a consumer would use or be affected by the goods. However, New York courts have interpreted this provision to apply *only* to personal injury cases. *Cf. Hole*, 83 A.D.2d at 716. In *Hole*, the court reasoned that to "to permit recovery for economic loss would impair traditional rights of parties to make their own contract and discard the principle that a buyer should pick his seller with care and recover any economic loss from that seller." *Id.* Therefore, because this

case does not involve personal injuries, the third-party beneficiary argument is likely untenable under New York law.

### d.  North Carolina

It is well established that North Carolina recognizes a third-party beneficiary exception to the privity requirement.  *See, e.g.*, *Coastal Leasing Corp. v. O'Neal*, 405 S.E.2d 208, 212 (N.C. Ct. App. 1991) ("If the third party is an intended beneficiary, the law implies privity of contract"); *In re MyFord*, 46 F. Supp. at 985 (holding the third-party beneficiary exception "valid under North Carolina law").  However, a case is subject to dismissal under North Carolina law if the plaintiff fails "to allege sufficient facts to support at least one of the required elements of a third-party beneficiary claim in [the] complaint."  *Metric Constr., Inc. v. Industrial Risk Insurers*, 401 S.E.2d 126, 128 (N.C. Ct. App. 1991).  A plaintiff bringing suit on a third-party beneficiary theory states enough to survive dismissal when the allegations in his complaint show (1) the existence of a contract between two other persons; (2) the contract was valid and enforceable; and (3) the contract was entered into for his direct, and not incidental, benefit. *Raritan River Steel Co. v. Cherry, Bekaert, & Holland*, 339 S.E.2d 62, 65 (N.C. Ct. App. 1986). It is questionable as to whether the Plaintiffs in this case have met the *Raritan* standard.  The Plaintiffs make conclusory allegations that they are the "intended third-party beneficiaries" of the warranty.  (FAC ¶ 172).

### e.  Washington

The Supreme Court of Washington has carved out a third-party beneficiary exception to the general rule that a vertical non-privity plaintiff cannot recover from a remote manufacturer for breach of implied warranty.  *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen.*

*Const. Inc.*, 831 P.2d 724 (Wash. 1992); *Kadiak Fisheries Co. v. Murphy Diesel Co.*, 422 P.2d 496 (Wash. 1967).  This exception allows a plaintiff-consumer to recover from a defendant-manufacturer as the intended end user of the product.  *Id.*  Washington courts' decisions to allow this exception rely on "the sum of interaction and expectations between the purchaser and the manufacturer."  *Kadiak*, 422 P.2d at 164-65.  In *Kadiak*, for instance, the court ruled that the exception applied because the "manufacturer knew the identity, purpose, and requirements of the purchaser's specifications" and shipped the product directly to the purchaser.  *Id.*

Here, the Plaintiffs have not alleged that PPG knew the identity, purpose, or requirements of their specifications.  In addition, the Rescue It! Products were purchased at Lowe's retailers, not shipped directly to the Plaintiffs on behalf of the Defendant-Manufacturer.  Therefore, the Washington cases are distinguishable.  In *Touchet*, the defendant knew the plaintiff's identity, purpose, and requirements for the grain storage building at issue.  *Touchet*, 831 P.2d at 730.  Moreover, "[a]s it was its business practice," the defendant delivered components directly to the plaintiff's construction site.  *Id.*

In addition, the case of *Urban Dev. v. Evergreen Bldg. Prods.*, 59 P.3d 112 (Wash. Ct. App. 2002), does not supports Plaintiffs' position.  In *Urban Dev.*, the court declined to apply the third-party beneficiary exception, holding that the *Kadiak* "sum of the interactions" test was not satisfied.  *Id.* at 117-18.  Because the plaintiff had "no direct interactions" with the defendant-manufacturer, the court held that the exception was not applicable.  *Id.* at 118.  The same is true in the instant case.  Plaintiffs have alleged no "direct interactions" with the Defendants in this case prior to the sale of the Rescue It! Products.  Therefore, the third-party beneficiary exception does not apply under Washington case law.

For all these reasons, the merchantability claims of Plaintiffs residing in Washington are dismissed with prejudice; and the merchantability claims of Plaintiffs residing in California, Ohio New York and North Carolina are dismissed without prejudice.

**D.      Magnuson-Moss Warranty Act (Count I)**

PPG asks the Court to dismiss the Magnuson-Moss Warranty Act ("MMWA") claim asserted in Count I.  In general, the MMWA provides a federal cause of action for state warranty claims. 15 U.S.C. §§ 2301 *et seq.*  To the extent the state-law express and implied warranty claims survive dismissal, so does the MMWA claim asserted in Count I.

**E.      Declaratory Judgment (Count II)**

In Count II, Plaintiffs bring a claim seeking declaratory, injunctive and equitable relief. The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201.  "However, the declaratory judgment statute 'is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'"  *Zaremba*, 458 F.Supp.2d at 552 (citing *Green v. Mansour*, 474 U.S. 64, 72 (1985).  In the Sixth Circuit, declaratory judgments "are favored when (1) the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Id.* (citing *Grant Trunk W.R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 325-26 (6th Cir. 1984)).  If neither of these factors is satisfied, the court will decline to grant the declaratory relief.  *Id.*

-30-

Where a plaintiff has claims cognizable under state statutes and case law which afford him complete relief, "the extraordinary award of a declaratory judgment will not be useful in clarifying nor settling the legal relations" between the parties. *Zaremba*, 458 F.Supp.2d at 552. Since the Court, in a diversity action, is bound to interpret and apply state law in the construction and validity of state-law claims, declaratory relief is not necessary to eliminate any uncertainty, insecurity or controversy facing the parties. panoply *Id*. at 552-53.  In addition, the claims alleged provide for a full panoply of relief.  In the absence of any factor necessitating imminent declaratory relief, the Court, in its discretion, declines to entertain this count, which is hereby dismissed.

**F.      Unjust Enrichment (Count VIII)**

In Count VIII, Plaintiffs assert a claim for unjust enrichment.  PPG seeks to dismiss the claim on several bases.  Because this is pled as an alternative theory to Plaintiffs' express warranty claim, the Court declines to dismiss the unjust enrichment claim at this time.[24]

**G.      Ohio Consumer Sales Practices Act (Count IX)**

In Count IX, Plaintiffs residing in Ohio allege a claim for violation of the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Revised Code §§ 1345.01 *et seq*.  Ohio Plaintiffs assert that PPG knowingly misrepresented that the Rescue It! Products were chip-, peel-, and crack-

---

[24]In Ohio, where a party retains money or a benefit that in equity or justice belongs to another, he will be liable for unjust enrichment. *Savett*, 2012 WL 3780451, at *6 (citing *Eyerman v. Mary Kay Cosmetics, Inc*., 967 F.2d 213, 222 (6th Cir. 1992), in turn citing *Hummel v. Hummel*, 133 Ohio St. 520 (1938)).  The elements of a claim for unjust enrichment in Ohio include (1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Id*. (citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179 (1984), in turn citing *Hummel*.)  But this is just Ohio law.

resistant, were suitable for providing protection to decks from harsh weather conditions, and lasted longer than ordinary deck paints and stains.  This alleged deception, if proven true, would violate O.R.C. 1345.02, which prohibits "suppliers" from committing "an unfair or deceptive act or practice in connection with a consumer transaction."[25]  Unlike the Ohio Plaintiffs' claim for implied warranty of merchantability, privity is not required for an OCSPA claim.  See O.R.C. 1345.01(D) (a consumer is "a person who engages in a consumer transaction with a supplier") and O.R.C. 1345.01(D) (a "supplier" does not have to deal directly with the consumer).

In bringing the OCSPA claim, Ohio Plaintiffs assert a list of unfair or deceptive consumer sales practices they claim PPG committed under O.R.C. 1345.02, and a list of unconscionable acts or practices PPG committed under O.R.C. 1345.03.  (See FAC ¶¶ 108-109.)  If Plaintiffs can prove any of these acts, they may be entitled, in an individual action, "to rescind their consumer transactions or recover actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages."  O.R.C. 1345.09.

PPG asks the Court to dismiss this claim because, it contends, the Ohio Products Liability Act ("OPLA"), §§ 2307.71 *et seq.*, preempts OCSPA claims.  Ohio Plaintiffs concede that OPLA abrogates OCSPA claims that are "primarily rooted in product-liability claims," but contend that the OCSPA claim is not a product liability claim as defined in the OPLA.

A point of distinction involves damages.  Under the OPLA, plaintiffs asserting "product liability claims" may recover compensatory damages due to "harm."  Harm includes physical damage to property other than the product.  It does not include "economic loss."  Plaintiffs assert

---

[25]It appears Plaintiffs target as deceptive O.R.C. 1345.02(B)(2): "[t]hat the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not."

-32-

they are only seeking economic loss.  Compare O.R.C. 2307.71(A)(2) (defining "economic loss"), (A)(7) (defining "harm"), and (A)(13) (defining "product liability claim").

There are numerous Ohio cases holding that the OPLA preempts OCSPA claims,[26] and the OPLA does not preempt OCSPA claims.[27]  The cases holding that the OPLA preempts OCSPA claims all involve personal injuries.  The cases contra do not.  It is not surprising that another district court facing similar allegations finds this question "a close call."  *See In Re Rust-Oleum Restore Mktg., Sales Practices and Prod. Liab. Litig.*, Case No. 15-C-1364, at 89-90 (interpreting Ohio cases).

The Court is inclined to deny the motion to dismiss the OCSPA claim at this time for two reasons.  One, this claim sets forth an alternative theory of recovery.  Two, in *Delahunt v. Cytodyne Technologies*, Southern District Judge Marbley noted that a cause of action accrues under the OCSPA as soon as the allegedly unfair or deceptive transaction occurs.  241 F.Supp.2d 827, 835 (S.D. Ohio 2003) (citing *Sproles v. Simpson Fence Co.*, 99 Ohio App.3d 72 (1994) (noting that the allegedly deceptive transaction, not the injury that results from the transaction, starts the statute of limitations running)).  Furthermore, "[t]he plain language of section 1345.09,

---

[26]*Blake v. Interneuron Pharmaceuticals*, No. C-1-98-672, 1998 WL 35307753, at *1 (S.D. Ohio Dec. 9, 1998) (involving dexfenfluramine); *Schnell v. American Home Prods. Corp.*, No. 3:00 CV 7228, 2000 WL 35777837, at *2 (N.D. Ohio Jul. 11, 2000) (involving the ingestion of Redux); *Bouchard v. American Home Prods. Corp.*, No. 3:98 CV 7541, 2002 WL 32597992, at *11 (N.D. Ohio May 24, 2002) (involving the ingestion of Redux, a diet drug); *Mitchell v. Proctor & Gamble*, No. 2:09 CV 426, 2010 WL 728222, at *2 (S.D. Ohio Mar. 1, 2010) (involving the ingestion of Prisolec OTC); *Fulgenzi v. Pliva, Inc*., 867 F.Supp.2d 966, 972-73 (2012) (involving Reglan, treating acid reflux); *S.S. v. Leatt Corp*., No. 1:12 CV 483, 2013 WL 3777098, at *2 (N.D. Ohio Jul. 17, 2013) (involving a neck brace).

[27]*Huffman v. Electrolux North America, Inc.*, 961 F.Supp.2d 875, 882 (N.D. Ohio 2013) (Carr) (involving a Frigidaire front-loading high efficiency washing machine from Lowe's); *Hoffer v. Cooper Wiring Devices, Inc*., No. 1:06 CV 763, 2007 WL 1725317, at *2 (N.D. Ohio Jun. 13, 2007) (involving push-in electric receptals).

which indicates that plaintiffs must choose between the remedies of rescission and damages, indicates that it is the *financial harm* resulting from the unfair or deceptive transaction that the statute was intended to redress."  *Id.* at 835.

Accordingly, the Court denies the motion to dismiss this claim at this time.

**H.      North Carolina Unfair and Deceptive Trade Practices Act (Count XI)**

PPG contends that the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") claim asserted in Count XI is subject to dismissal under North Carolina's economic loss rule.  In support, it cites *Bussian v. DaimlerChryslerCorp.*, 411 F.Supp.2d 614, 625 (M.D.N.C. 2006), *Moore v. Coachmen Indus., Inc.*, 129 N.C. App. 389, 401-02 (1998), and *Gregory v. Atrium Door and Window Co.*, 415 S.E.2d 574, 575 (N.C. Ct. App. 1992).  North Carolina Plaintiffs argue that "the North Carolina courts have not decided whether the economic loss rule applies to UDTPA claims," quoting *Martin v. Bimbo Foods Bakeries Distrib.*, LLC, No. 5:15-CV-96-BR, 2015 WL 1884994, at *7 (E.D.N.C. Apr. 24, 2015), in turn citing *Ellis v. Louisiana-Pacific Corp.*, 699 F.3d 778, 787 n.5 (4th Cir. 2012)). Plaintiffs also contend that North Carolina's economic loss rule does not bar damages caused to property other than the defective product itself.

The Court has reviewed the cases and declines to hold that the economic loss rule bars Plaintiffs' UDTPA claim.  First, the economic loss rule "prohibits the purchaser of a defective product from using tort law to recover purely economic losses."  *Bussian*, 411 F. Supp. 2d at 625.  The rationale is that the sale of goods is accomplished by contract, and "the parties are free to include, or exclude, provisions as to their respective rights and remedies, should the product prove to be defective."  *Id.*  However, it is well settled among North Carolina courts that when "a

-34-

defective product causes damage to property other than the product itself, losses attributable to the defective product are recoverable in tort rather than contract." *Id.* (citing *Moore*, 129 N.C. App. at 402); *see also Reece v. Homette Corp.*, 110 N.C. App. 462, 466 (1993) (distinguishing recovery in tort for damage to the defective product from "a claim arising from a factual situation where the manufactured product causes physical injury to a person *or to property other than the manufactured product itself*") (emphasis added).

In the instant case, Plaintiffs have alleged damage to property other than the Rescue It! Products themselves – namely, damage to decks, porches and other tangible property or real property.[28]  However, this Court, sitting in diversity, "declines to create North Carolina common law by extending the economic loss rule to bar [Plaintiffs'] UDTPA claim." *Martin*, 2015 WL 1884994, at *7.  In *Martin*, a district court sitting in diversity recently noted the uncertainty among North Carolina courts as to whether the economic loss rule applies to UDTPA claims.  *Id.* "In the face of such uncertainty," the court observed that federal courts have declined to extend the rule to bar UDTPA claims.  *Id.*; *see also Yancey v. Remington Arms Co., LLC*, Nos. 1:12CV477, 1:12CV437, 1:10CV918, 2013 WL 5462205, at *10 n.13 (M.D.N.C. Sept. 30, 2013) (declining to hold that the economic loss rule barred plaintiff's UDTPA claims); *Ellis*, 699 F.3d at 786-87.  This Court will follow the line of cases declining to extend the economic loss rule to bar Plaintiffs' UDTPA claim.  Therefore, Count XI is not dismissed.

---

[28] The Court notes in passing that Defendants' reliance on *Gregory* has little persuasive effect. 415 S.E.2d at 574.  In *Gregory*, the court noted that "deteriorating doors, along with some water damage to flooring," constituted "only economic loss."  *Id.*  However, the court in *Gregory* did not discuss this issue in the context of the economic loss rule.  Rather, the court discussed this issue with respect to North Carolina's privity requirement.  *Id.*

## I.      State Law Fraud-Based Claims (Counts X to XIX)

Counts X through XIX allege violations of the following state consumer protection, false

advertising, and deceptive business practices statutes.

| | | |
|---|---|---|
| Count X: | Washington Consumer Protection Act, | |
| | Wash. Rev. Code §§19.86.010, *et seq.* | |
| | | |
| Count XI: | North Carolina Unfair and Deceptive Trade Practices Act, | |
| | N.C. Gen. Stat. § 75-1.1, *et seq.* | |
| | | |
| Count XII: | California Business & Professions Code, § 17200, *et seq.* | |
| | Unfair Business Practices Act | |
| | | |
| Count XIII: | California Business & Professions Code, § 175000, *et seq.* | |
| | False Advertising Laws | |
| | | |
| Count XIV: | California Business & Professions Code, § 1750, *et seq.* | |
| | Consumer Legal Remedies Act | |
| | | |
| Count XV: | Massachusetts Consumer Protection Act, | |
| | M.G.L. c. 93a §§ 2 and 9 | |
| | | |
| Count XVI: | Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349 | |
| | | |
| Count XVII: | False Advertising, N.Y. Gen. Bus. Law §§ 350, *et seq.* | |
| | | |
| Count XVIII: | Missouri Merchandising Practices Act, Mo. Stat. §§ 407.010 *et seq.* | |
| | | |
| Count XIX: | Michigan Consumer Protection Act, | |
| | Mich. Comp. Laws §§ 445.901, *et seq.* | |

According to PPG, the Court should dismiss all these claims because they have not been

pled with particularity under Fed. R. Civ. P. 9(B), Plaintiffs failed to plead essential elements of

these claims, and because PPG's numerous representations amount to nothing more than

advertising puffery.

Taking the last matter first, the Court has previously rejected PPG's "advertising puffery"

arguments for the reasons explained, *supra* at 13-15.  The Court held that the numerous

representations PPG made on the Rescue It! Products' labels alone constituted affirmations of fact or promises about the Products' performance properties which described the goods, formed the basis of the bargain, and constituted express warranties.  In other words, those representations were not mere advertising puffery.

The Court also denies PPG's request to dismiss these state-law claims because Plaintiffs have failed to sufficiently allege fraudulent or deceptive conduct under Rule 9(b).  Rule 9(b)'s purpose is to ensure fair notice to the defendant, not to test a claim's factual allegations. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999).  Plaintiffs are required, at a minimum, to identify the "who, what, when, where, and how" of the alleged fraud.  *Sanderson v. HCA-The Healthcare Co*., 447 F.3d 873, 877 (6th Cir. 2006) (citation omitted).  Additionally, "Rule 9(b)'s particularity requirement may be relaxed when certain information is solely within the defendant's knowledge."  *U.S. Securities and Exchange Comm'n v. Blackwell*, 291 F.Supp.2d 673, 691 (6th Cir. 2003) (citing *Michaels Bldg. Co. v. Ameritrust Co*., 848 F.2d 674, 680-81 (6th Cir. 1988) ("We will not demand clairvoyance from pleaders.")

PPG is the "who."  The "what" are the numerous representations PPG made on the product labels regarding the Products' performance properties.  The "when" are the dates the individual Plaintiffs purchased their Rescue It! Products–which are, presumably, shortly before they applied them.  Regarding the "how," Plaintiffs allege that PPG made numerous misrepresentations about the Rescue It! Products' performance properties on the labels (and other advertising) regarding the Products' durability, longevity, etc.  Plaintiffs allege that PPG had actual notice of the Products' defects via publicly available customer complaints on PPG's

website, Lowe's website, and direct interaction with customer service representatives.  Plaintiffs further claim that PPG sought to mask the deficiencies inherent in the Products by regularly redesigning their website, re-editing promotional videos, and altering product preparation and application instructions–all in an effort to shift the blame for the defects onto its customers.  And finally, Plaintiffs assert that PPG continues to market and sell the Products to millions of unsuspecting consumers despite knowing they are not fit for their intended purpose and are destined to deteriorate prematurely.  The Court finds that these allegations are sufficient to withstand on rule 9(b) grounds.

The Court also rejects PPG's arguments that Plaintiffs have insufficiently alleged reliance on PPG's alleged misrepresentations, PPG's knowledge of those misrepresentations, and causation.  The complaint alleges, and the Court presumes, that Plaintiffs read the many descriptions of the Products which PPG printed on the labels of the cans, and relied on those representations, before purchasing them.  *See also Bernick*, 293 S.E.2d at 413 (holding that reliance should be inferred from the product's purchase where "the natural tendency of the representations made is such as to induce such purchase or use."); *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 329 (D.N.J. 2008) (holding the same).  With regard to knowledge, Rule 9(b) expressly states that knowledge and other conditions of a person's mind may be alleged generally, and may be relaxed when certain information is solely within the defendant's province.  Here, Plaintiffs allege that PPG was aware of these problems via customer complaints and direct customer service contact, and were plainly aware about the chipping problems as that was evidenced by its own website.  Finally, Plaintiffs have sufficiently alleged causation, as they make clear that the Products deteriorated within months of application causing, among other

things, damage to the deck structures and the diminution of home values.  In any event, proximate cause is typically a question of fact, and is not amenable to resolution at this time.

Accordingly, the Court denies the Motion to Dismiss these statutory claims.

**IV.**

Based on the foregoing, the Court **GRANTS IN PART** the Motion to Dismiss (**Doc #: 26**) as follows.  The Court dismisses with prejudice the federal Declaratory Judgment Act claim alleged in Count II, the claim for breach of implied warranty of fitness for a particular purpose alleged in Counts VI and VII, and the claim for breach of the implied warranty of merchantability alleged in Count IV on behalf of Plaintiffs residing in the State of Washington. The Court dismisses without prejudice the claim for breach of the implied warranty of merchantability alleged in Count IV on behalf of Plaintiffs residing in the States of California, Ohio and New York.

The Motion to Dismiss is **DENIED** as to all other claims.

**IT IS SO ORDERED.**


_/s/ Dan A. Polster    January 27, 2016_
**Dan Aaron Polster**
**United States District Judge**

-39-